32 P.3d 695

James R. **PAYNE** and Diana J. Payne, husband and wife, Stacie Rachelle Payne, individually, Plaintiffs–Appellants,

v.

Michael F. **WALLACE**, individually, Defendant–Respondent.

No. 25991.

Court of Appeals of Idaho.

Aug. 14, 2001.

Nielson & Reece, P.L.L.C., Pocatello, for appellant. Norman G. Reece Jr. argued.

Cooper Larsen, Pocatello, for respondent. Gary L. Cooper argued.

LANSING, Judge.

This action arises from an automobile accident. Plaintiffs James R. Payne and Diana J. Payne, husband and wife, and their daughter, Stacie Rachelle Payne, appeal the district court's denial of their motion to amend their complaint to include a claim for punitive damages and the district court's order granting a directed verdict in favor of defendant Michael Wallace on Stacie Payne's claim of intentional infliction of emotional distress. In addition, they challenge the district court's disposition of the parties' respective requests for costs and attorney fees.

## I.

### FACTS AND PROCEDURAL HISTORY

Automobiles driven by Diana Payne and Michael Wallace collided in an intersection after Wallace failed to stop at a stop sign. Diana sustained injuries to her left arm and the right side of her chest, and experienced pain in her hips, as a result of the accident. Stacie, then eight years old, was in the front passenger seat of the Payne vehicle. She did not suffer any physical injuries.

Immediately after the collision, Wallace exited his vehicle and in a belligerent manner began yelling profanities and blaming Diana for the accident. Diana and a bystander, Travis Holt, later testified that Wallace approached the Paynes' vehicle as he was yelling vulgarities but was stopped by Holt. Holt testified that Wallace tried to approach the Paynes twice, and that Holt intercepted Wallace both times. The evidence is in conflict as to how many times Wallace resumed his belligerent shouting, but Diana Payne testified that he repeated this behavior four or five times. The Paynes did not exit their vehicle until the police arrived, by which time Wallace had calmed down.

The Paynes filed an action against Wallace in which they sought damages for Diana's physical injuries, James's loss of consortium, and Stacie's emotional distress allegedly sustained as a result of Wallace's aggressive, profane shouting. The Paynes moved for leave to amend their complaint to allege a claim for punitive damages pursuant to Idaho Code § 6–1604(2), but the district court denied the motion. Wallace initially denied liability, but on the day before the trial, Wallace's attorney gave notice that Wallace would admit his negligence and concede liability for the accident. Therefore, the trial proceeded on the issues of the extent of Diana's physical injuries and recoverable damages, James's claim for loss of consortium, and Stacie's claim for intentional infliction of emotional distress.

At the close of plaintiffs' trial evidence, the district court granted a motion by Wallace for a directed verdict on Stacie's claim of intentional infliction of emotional distress. The Paynes renewed their motion to add a claim for punitive damages, but this motion was denied. The jury thereafter returned a verdict awarding damages of $1,948.51 for Diana's injuries but rejected James's loss of consortium claim.

## II.

## DISCUSSION AND ANALYSIS

### A. Intentional Infliction of Emotional Distress

▮ The first issue on appeal is whether the district court committed error in granting a directed verdict in favor of Wallace on Stacie's claim for intentional infliction of emotional distress. A directed verdict dismissing a claim is permissible only if there is no substantial evidence upon which the jury could find in favor of the claimant. *Stephens v. Stearns*, 106 Idaho 249, 253, 678 P.2d 41, 45 (1984); *Curtis v. DeAtley*, 104 Idaho 787, 789, 663 P.2d 1089, 1091 (1983). A claim must be submitted to the jury if the evidence is of sufficient quantity and probative value that reasonable minds could conclude that a verdict in favor of the claimant was proper. *Elce v. State*, 110 Idaho 361, 363, 716 P.2d

505, 507 (1986); *All v. Smith's Mgmt. Corp.*, 109 Idaho 479, 480, 708 P.2d 884, 885 (1985).

▮ A claim for intentional infliction of emotional distress will lie only when there has been extreme and outrageous conduct by the defendant and resultant severe emotional distress suffered by the plaintiff. *Davis v. Gage*, 106 Idaho 735, 741, 682 P.2d 1282, 1288 (Ct.App.1984). The four elements of this tort are: 1) the defendant's conduct was intentional or reckless; 2) the conduct was extreme and outrageous; 3) there was a causal connection between the wrongful conduct and the plaintiff's emotional distress; and 4) the emotional distress was severe. *Spence v. Howell*, 126 Idaho 763, 774, 890 P.2d 714, 725 (1995); *Davis, supra*. We find it unnecessary to address the first three of these elements, for we agree with the district court's assessment that there was insufficient evidence to satisfy the fourth element, severe emotional distress.

▮ Although it is not necessary to show that the plaintiff's emotional distress resulted in a physical manifestation, *Curtis v. Firth*, 123 Idaho 598, 601, 850 P.2d 749, 752 (1993), liability for intentional infliction of emotional distress arises only when the emotional reactions are "so severe that no reasonable [person] could be expected to endure it." *Davis, supra*. In *Evans v. Twin Falls County*, 118 Idaho 210, 220, 796 P.2d 87, 97 (1990), and *Davis*, the Idaho courts adopted the following commentary from the RESTATEMENT (SECOND) OF TORTS to describe the severity of the emotional distress that is necessary to support recovery for this tort:

The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of

living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.

RESTATEMENT (SECOND) OF TORTS § 46 cmt. j (1965).

With respect to Stacie's claim for emotional distress, Diana testified that during Wallace's initial tirade, Stacie screamed, and each time Wallace resumed yelling insults, Stacie became fearful and began crying again. Stacie told her mother that she was afraid of Wallace. Diana testified that she was able to calm her daughter down after each of Wallace's outbursts. Stacie was a witness at trial. When asked to describe how Wallace's behavior made her feel, she responded that it made her "angry and sad" and that she was afraid that Wallace was going to do something to hurt her and her mother. The only other evidence of Stacie's emotional distress was testimony that Stacie had a sleep disturbance the night following the accident and that she had a continuing aversion to the intersection where the accident occurred. Diana testified that on the night of the accident, Stacie cried out in her sleep several times, and when Diana twice went into Stacie's room to investigate, she found Stacie tossing, yelling and crying in her sleep. There was no evidence that Stacie's sleep problem continued beyond that first night, and the only evidence of any continuing emotional reaction was testimony that she has an aversion to traveling through the intersection. This evidence is insufficient to demonstrate the *severe* emotional suffering that is required to support a claim for intentional infliction of emotional distress.

We are not unmindful of Stacie's tender age at the time of the incident. A child victim's age and attendant vulnerability are factors to be considered in determining whether a defendant's conduct was sufficiently outrageous or reckless to give rise to liability, and a child may suffer severe anguish from conduct that would not be likely to cause such reactions in an adult. However, the victim's age does not lessen the requirement that her actual distress be severe. In the case before us, the district court correctly granted Wallace's motion for a directed verdict on the claim for intentional infliction of emotional distress because the evidence does not show that Wallace's distasteful behavior caused *severe* emotional distress to Stacie.

## B. Punitive Damages

By terms of Idaho Code § 6–1604(2), a party may present a request for punitive damages only with leave of the trial court. The court must allow an amendment of the pleadings to state a prayer for punitive damages "if the moving party establishes ... a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages." I.C. § 6–1604(2). The Paynes contend that the egregiousness of Wallace's behavior was sufficient to warrant presenting a punitive damages claim to the jury and that the district court therefore erred in denying the Paynes' motion to present such a claim.

An award of punitive damages is permissible only where the defendant's conduct was "oppressive, fraudulent, wanton, malicious or outrageous." I.C. § 6–1604. In *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983), the Idaho Supreme Court described the circumstances necessary to justify punitive damages:

> An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that be termed "malice, oppression, fraud or gross negligence"; "malice, oppression, wantonness"; or simply "deliberate or willful."

*Id.* at 905, 665 P.2d at 669 (citations omitted). Our Supreme Court has cautioned that "punitive damages are not favored in the law and should be awarded only in the most unusual and compelling circumstances, and are to be awarded cautiously and within narrow limits." *Walston v. Monumental Life*

*Ins. Co.*, 129 Idaho 211, 221, 923 P.2d 456, 466 (1996) (quoting *Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 52, 830 P.2d 1185, 1190 (1992)). The decision whether to allow the jury to consider punitive damages rests in the discretion of the trial court. *Weaver v. Stafford*, 134 Idaho 691, 700, 8 P.3d 1234, 1243 (2000); *Curtis*, 123 Idaho at 604, 850 P.2d at 755. On appellate review of the trial court's decision, we examine whether the record contains substantial evidence to support such an award. *Student Loan Fund of Idaho v. Duerner*, 131 Idaho 45, 52, 951 P.2d 1272, 1279 (1997); *Curtis*, 123 Idaho at 605, 850 P.2d at 756; *Garnett v. Transamerica Ins. Serv.*, 118 Idaho 769, 781, 800 P.2d 656, 668 (1990).

■■■ Our analysis begins with the observation that punitive damages are unavailable unless the plaintiff can show the invasion of a legally protected right. *Village of Peck v. Denison*, 92 Idaho 747, 751–52, 450 P.2d 310, 314–15 (1969). That is, the plaintiff must first be entitled to legal or equitable relief before punitive damages can be obtained. *Boise Dodge, Inc. v. Clark*, 92 Idaho 902, 906–07, 453 P.2d 551, 555–56 (1969). *See also Aztec Ltd., Inc. v. Creekside Inv. Co.*, 100 Idaho 566, 570, 602 P.2d 64, 68 (1979). This rule eliminates the possibility of an award of punitive damages to Stacie, for we have held that the burden of proof was not sustained on her cause of action.

We consider, therefore, only whether the evidence was sufficient to warrant submission of a punitive damages claim by Diana. We conclude that it does not. The Paynes predicate their claim for punitive damages on Wallace's belligerence and profanity following the collision. We are in agreement with the district court that foul language is not an adequate basis for an award of punitive damages. We find wisdom in the oft-quoted statement of Judge Magruder, "Against a large part of the frictions and irritations and clashings of temperaments incident to participation in a community life, a certain toughening of the mental hide is a better protection than the law could ever be." Magruder, *Mental and Emotional Disturbance in the Law of Torts*, 49 HARV. L.REV. 1033, 1035 (1936). Of the expectation of legal compensation for rude behavior, our Supreme Court has said:

> The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt.

*Brown v. Fritz*, 108 Idaho 357, 362, 699 P.2d 1371, 1376 (1985) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (1965)). Although this comment in *Brown* was made in the analysis of a claim for negligent infliction of emotional distress, we think it equally applicable to a request for punitive damages. Wallace's conduct, although utterly unjustified and deserving of condemnation, is not the sort of extreme and harmful behavior that will support an award of punitive damages. Therefore, we conclude that the district court did not abuse its discretion in denying the Paynes' motion to add a prayer for punitive damages to their complaint.

## C. Attorney Fees in the District Court

### 1. Idaho Code § 12–121 and Idaho Rule of Civil Procedure 54

■■■ The Paynes next assert that the district court erred in denying their request for attorney fees pursuant to I.C. § 12–121. The determination whether to award attorney fees under that statute is discretionary with the trial court and will not be overturned on appeal absent an abuse of discretion. *Everett v. Trunnell*, 105 Idaho 787, 791, 673 P.2d 387, 391 (1983); *United States Nat'l Bank of Oregon v. Cox*, 126 Idaho 733, 735, 889 P.2d 1123, 1125 (Ct.App.1995).

■■■ Section 12–121 authorizes trial courts to award attorney fees to the prevailing parties in civil actions, but Idaho Rule of Civil Procedure 54(e)(1) limits such awards to actions where "the case was brought, pursued or defended frivolously, unreasonably or without foundation." Further, an award is permitted only if the *entire claim or defense* is frivolous. *See Simons v. Simons*, 134 Idaho 824, 830, 11 P.3d 20, 26 (2000). "Where ... there are multiple claims and

multiple defenses, it is not appropriate to segregate those claims and defenses to determine which were or were not frivolously defended or pursued. The total defense of a party's proceedings must be unreasonable or frivolous." *Magic Valley Radiology Associates v. Professional Bus. Services, Inc.*, 119 Idaho 558, 563, 808 P.2d 1303, 1308 (1991).

In the present case, the district court declined to award attorney fees to the Paynes because Wallace's defense was not entirely frivolous. There is no abuse of discretion in this determination. Although Diana prevailed on her personal injury claim, Wallace prevailed on the claims asserted by James and Stacie and also on the Paynes' request for punitive damages. Further, with respect to Diana's damages, Wallace raised legitimate issues as to whether some of the asserted medical expenses and lost wages were caused by the collision or by an independent medical condition and a fall that Diana suffered after the automobile accident. The district court's denial of attorney fees pursuant to I.C. § 12–121 is therefore affirmed.

### 2. I.R.C.P. 37(c)

The Paynes also assert entitlement to attorney fees as sanctions for Wallace's unreasonable denial of two requests for admissions. During the discovery phase of these proceedings, the Paynes served requests for admissions asking Wallace to "admit that Defendant Michael F. Wallace was guilty of negligence which was a proximate cause of the accident." Another request asked that he "admit that none of the Plaintiffs was guilty of negligence which was a proximate cause of the accident." Both requests were initially denied by Wallace. On the day before the trial, however, Wallace's attorney notified the Paynes' attorney that Wallace would admit negligence and liability for the accident. Based on Wallace's initial denial of their requests for admissions, the Paynes sought an award of attorney fees pursuant to I.R.C.P. 37(c) which provides:

> If a party fails to admit the ... truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the ... truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that (1) the request was held objectionable pursuant to Rule 36(a), or (2) the admission sought was of no substantial importance, or (3) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (4) there was other good reason for the failure to admit.

The district court denied the Paynes' claim for sanctions under this rule.

By its plain terms, Rule 37(c) authorizes sanctions only in favor of a party who, after a request for admission was denied, "thereafter *proves* ... the truth of the matter...." (Emphasis added.) Here, although Wallace's refusal to admit one or both of the Paynes' requests for admissions may have been unreasonable, he ultimately stipulated to liability, thereby removing the issue of his negligence or the Paynes' comparative negligence from the issues to be contested at trial. Applying the plain language of Rule 37(c), we conclude that in this circumstance, because the Paynes were not called upon to prove at trial the issues covered by the requests for admissions, Rule 37(c) sanctions were properly denied by the district court.

This ruling should not be seen as allowing unethical or improper discovery practices to go unpunished. Admittedly, a party could unreasonably deny requests for admissions and thereby delay proceedings and increase trial preparation costs for an opponent, and then avoid Rule 37(c) sanctions by admitting the requests after the costs have been incurred. Such misconduct may be sanctioned, however, under other provisions of Idaho law. First, I.C. § 12–123 authorizes the award of attorney fees as a sanction for "frivolous conduct," which includes conduct that "obviously serves merely to harass or maliciously injure another party to the civil action" or "is not supported in fact or warranted under existing law." The Idaho Rules of Civil Procedure also offer other remedies for discovery abuses. Rule 26(f)(1) specifies that the signature of a party or his attorney on a discovery request or response

constitutes a certification that the content of the document is "not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." If the trial court finds that a certification has been made in violation of this rule, the court may impose upon the person who made the certification or the party on whose behalf the response was made, an appropriate sanction, including reasonable attorney fees incurred because of the violation. In addition, Rule 11(a)(1) imposes a similar certification standard for signatures on any "pleading, motion, or other paper," which includes discovery responses, and the rule empowers the trial court to impose sanctions upon the attorney or the represented party for violations of the certification. Because these alternative remedies exist, we are confident that our holding, disallowing Rule 37(c) sanctions where an admission was made belatedly but in sufficient time to avoid the necessity for the opponent to prove the matter at trial, will not foster unscrupulous discovery practices. The denial of the Paynes' request for Rule 37(c) sanctions is affirmed.

## D. Award of Costs to Wallace Pursuant to I.R.C.P. 68

■ Finally, we address the Paynes' contention that the district court committed error in awarding to Wallace part of his costs incurred in defending the action.

1. Rule 68 provides in part:

(a) At any time more than 14 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against the defending party for the money or property or to the effect specified in the offer, which offer of judgment shall be deemed to include all claims recoverable, including any attorneys fees awardable under Rule 54(e)(1), and any costs awardable under Rule 54(d)(1), which have accrued up to the date of the offer of judgment.

. . . .

(b) In cases involving claims for monetary damages, any costs under Rule 54(d)(1) awarded against the offeree must be based upon a comparison of the offer and the "adjusted award." The adjusted award is defined as (1) the verdict in addition to (2) the offeree's costs under Rule 54(d)(1) incurred before service of the offer of judgment and (3) any attorney fees under Rule 54(e)(1) incurred before service of the offer of

Approximately one month before trial, Wallace made an offer of judgment for $2,400 pursuant to I.R.C.P. 68.[1] The Paynes declined the offer and subsequently received a jury verdict for a lesser amount, $1,948.51. The court thereafter determined that the Paynes were entitled to recover costs under Rule 54(d)(1) because they were the prevailing party on the primary claim in the case, Diana's cause of action for personal injuries. Of the allowable costs claimed by the Paynes, $450.02 was incurred before service of Wallace's offer of judgment. Thus, the Paynes' "adjusted award" for purposes of I.R.C.P. 68(b) was $2,398.53 ($1,948.51 verdict plus $450.02 in costs incurred prior to the offer of judgment). Because this adjusted award was less than the rejected offer of judgment, the district court ordered the Paynes to pay Wallace's costs incurred after the offer of judgment pursuant to Rule 68(b)(i) and ordered Wallace to pay the Paynes' costs incurred prior to the offer pursuant to Rule 68(b)(ii).

On appeal, the Paynes contend that the district court did not correctly compute their "adjusted award" under Rule 68(b) because the court did not include any amount in the adjusted award for their attorney fees incurred before service of the offer of judgment. The Paynes' argument lacks merit. The district court included nothing in the adjusted award for attorney fees because the

judgment. Provided, in contingent fee cases where attorney fees are awardable under Rule 54(e)(1), the court will pro rate the offeree's attorney fees to determine the amount incurred before the offer of judgment in reaching the adjusted award.

If the adjusted award obtained by the offeree is less than the offer, then:

(i) the offeree must pay those costs of the offeror as allowed under Rule 54(d)(1), incurred after making the offer;

(ii) the offeror must pay those costs of the offeree, as allowed under Rule 54(d)(1), incurred before the making of the offer; and

(iii) the offeror shall not be liable for costs and attorney fees awardable under Rules 54(d)(1) and 54(e)(1) of the offeree incurred after the making of the offer.

If the adjusted award obtained by the offeree is more than the offer, the offeror must pay those costs, as allowed under Rule 54(d)(1), incurred by the offeree both before and after, the making of the offer.

court determined that the Paynes were not entitled to an award of attorney fees. The district court held, and we agree, that the Rule 68(b) reference to the inclusion of "any attorney fees under Rule 54(e)(1) incurred before service of the offer of judgment" in computing the adjusted award applies only if attorney fees have been granted. The very term "adjusted award" implies that it includes only sums that have actually been awarded to the offeree. We have upheld the district court's denial of the Paynes' request for attorney fees under Rule 54(e)(1). Therefore, the district court properly held that no amount for attorney fees should be included in calculating the Paynes' adjusted award for purposes of Rule 68(b).

Because the Paynes' adjusted award, computed in compliance with Rule 68(b), was less than Wallace's offer of judgment, the district court correctly awarded to Wallace his costs that were incurred after the offer was made.

## III.

## CONCLUSION

The Paynes have shown no error in the district court's grant of a directed verdict on Stacie's claim for intentional infliction of emotional distress, its denial of their request to present a claim for punitive damages, its denial of an award of attorney fees to the Paynes, or its application of I.R.C.P. 68. Therefore, the judgment of the district court is affirmed.

Chief Judge SCHWARTZMAN and Judge PERRY CONCUR.