In re Allan ELIAS, Debtor.

Scott K. Dominguez, by and through
his guardian and conservator,
Jackie Hamp, Plaintiff,

v.

Allan Elias, Defendant.

Bankruptcy No. 02–41640.
Adversary No. 03–6058.

United States Bankruptcy Court,
D. Idaho.

Dec. 19, 2003.

Brent O. Roche and Daniel C. Green, Racine, Olson, Nye, Budge & Bailey, Pocatello, ID, for Plaintiff.

Craig R. Jorgensen, Pocatello, ID, for Defendant.

## MEMORANDUM OF DECISION RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

JIM D. PAPPAS, Chief Judge.

In this adversary proceeding, Plaintiff Scott Dominguez, acting through his conservator and legal guardian Jackie Hamp, requests that the Court determine that certain debts owed to him by Defendant Allan Elias are excepted from discharge in Defendant's Chapter 7 bankruptcy case. Plaintiff alleges that the debts resulted from Defendant's willful and malicious conduct in injuring him, and therefore, that his damage claims against Defendant are nondischargeable under 11 U.S.C. § 523(a)(6).

Plaintiff filed a motion for summary judgment, arguing that the Court should conclude that both Defendant's conviction on federal criminal charges stemming from Plaintiff's injuries, and a $23,400,000 state court money judgment entered in favor of Plaintiff against Defendant, preclusively establish that the debts are nondischargeable.[1] Defendant argues the judgments are not entitled to preclusive effect in this action. The Court concludes that while the federal criminal conviction fails to establish all the necessary elements of Plaintiff's claim, the state court money judgment does satisfy all the elements of § 523(a)(6).

## I. Background and Undisputed Facts.

### A. The Incident.

On August 27, 1996, Plaintiff, a twenty-seven year old father of one child, worked for Evergreen Resources, Inc. at that company's fertilizer operation in Soda Springs, Idaho. Defendant owned and operated Evergreen Resources and was Plaintiff's supervisor. On that day, Plaintiff suffered severe and permanent injuries on the job.

The day before, at Defendant's direction, Plaintiff had been inside a railroad tank car cleaning out a form of "sludge" that contained significant levels of cyanide. Defendant was aware that the tank car contained harmful chemicals, but did not provide Plaintiff with any safety equipment. By the end of the day, Plaintiff was experiencing a sore throat and irritated nasal passages.

On August 27, Plaintiff was again instructed to enter the tank car to continue removing the sludge. After about an hour inside the car, Plaintiff collapsed. Plaintiff's co-workers tried to rescue him from the tank car, but they were unable to do so. After a considerable time, emergency personnel arrived and were finally able to remove Plaintiff from the tank car and transport him to a local hospital.

The doctor that cared for Plaintiff initiated treatment for cyanide poisoning, to which Plaintiff initially responded favorably. Despite his initial response to early treatments, Plaintiff ultimately sustained significant brain damage, which substantially impaired both his cognitive abilities and motor skills. As a result of his injuries, Plaintiff was rendered unable to provide or care for his young daughter, yet alone himself. He has difficulty speaking, walking, and feeding himself, and his body frequently "locks up," requiring someone to help him move again.

### B. The Legal Proceedings.

#### 1. The civil action.

On July 13, 1998, Plaintiff, through his legal guardian, filed a civil action against Defendant in Idaho state court. Aff. of Roche, Ex. 6, Docket No. 9. Plaintiff's complaint sought money damages from Defendant. By that time, the Idaho Industrial Commission had made an award to Plaintiff under Idaho's Worker Compensation Law, Idaho Code § 72–101 et seq. While the Worker Compensation Law is generally intended to provide the exclusive remedy for an injured worker, see Idaho Code §§ 72–211; 72–209(1), in the civil action, Plaintiff argued that an exception

---

1. Recent case law in this Circuit encourages the use of the terms "claim preclusion" in place of "res judicata" and "issue preclusion" in place of "collateral estoppel" when examining the legal effect to be given to judgments in this context. See, e.g., Littlejohn v. United States, 321 F.3d 915, 920 n. 2, 923 n. 10 (9th Cir.2003); In re DiSalvo, 219 F.3d 1035, 1038 n. 4 (9th Cir.2000); In re Associated Vintage Group, Inc., 283 B.R. 549, 554–55 (9th Cir. BAP 2002); In re Paine, 283 B.R. 33, 38–39 (9th Cir. BAP 2002). Despite the parties' use of all four terms in their submissions, in the interest of clarity and consistency, the Court will refer to the relevant doctrines as "claim preclusion" and "issue preclusion."

to those statutes allowed him to seek compensation from Defendant in addition to the award made by the Industrial Commission because, as an employee, Plaintiff had allegedly been injured by the "wilful or unprovoked physical aggression of the employer .…" Idaho Code § 72–209(3). Defendant, through counsel, filed an answer to Plaintiff's complaint, denying most of the allegations. Aff. of Roche, Ex. 7, Docket No. 9.

Plaintiff's original complaint reserved the right to add a claim for punitive damages. Aff. of Roche, Ex. 6 at ¶ 20, Docket No. 9. Although the exact date is unclear, during the course of litigation, Plaintiff filed a motion to amend his complaint to add a claim for punitive damages. Defendant opposed Plaintiff's motion, but on July 20, 2000, the state court granted Plaintiff's motion to amend. Aff. of Roche, Ex. 14, Docket No. 9. In granting Plaintiff's motion, the state court acknowledged that punitive damages are only available under Idaho law when a plaintiff proves "that the defendant acted in a manner that was 'an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences.'" Aff. of Roche, Ex. 14 at 3, Docket No. 9 (quoting *Magic Valley Radiology Assocs., P.A. v. Prof'l Bus. Servs., Inc.,* 119 Idaho 558, 808 P.2d 1303, 1306 (1991) (citing *Cheney v. Palos Verdes Inv. Corp.,* 104 Idaho 897, 665 P.2d 661, 669 (1983))). The state court also recognized that "[t]he justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed 'malice, oppression, fraud or gross negligence .…'" Aff. of Roche, Ex. 14 at 3, Docket No. 9 (quoting from *Magic Valley Radiology,* 808 P.2d at 1306; *Cheney,* 665 P.2d at 669). *See also Payne v. Wallace,* 136 Idaho 303, 32 P.3d 695, 699 (2001) (citing the same language). Based upon the record before it, the state court allowed Plaintiff to amend his complaint to include a prayer for punitive damages because there was evidence that Defendant had engaged in the kind of "oppressive, fraudulent, wanton, malicious or outrageous conduct …" required by Idaho Code § 6–1604(1) (2000) (amended 2003).

While the litigation was apparently contentious, Plaintiff's claim against Defendant was realized when, on March 4, 2003, the state court entered a default judgment against Defendant in the amount of $23,400,000, consisting of $16,900,000 in compensatory damages and $6,500,000 in punitive damages. Aff. of Roche, Ex. 5, Docket No. 9. The court entered a default judgment because Defendant's counsel had withdrawn,[2] and Defendant failed to appoint new counsel or appear on his own. *See* I.R.C.P. 11(b)(3); Aff. of Roche, Ex. 25, Docket No. 9.

## 2. The criminal proceedings.

As noted above, the Federal Government also prosecuted Defendant in U.S. District Court for his conduct in connection with Plaintiff's injuries and Defendant's fertilizer operations. On May 7,

---

**2.** At the hearing, Defendant's attorney, who also represented Defendant in the state court action, indicated that his decision to withdraw was based in part on the Defendant's lack of resources to pay legal fees and costs, but also because Defendant decided he could better protect his interests by filing for bankruptcy. The Court interprets this comment to mean, in effect, than rather than try to further defend against Plaintiff's claims in state court, Defendant would devote his limited resources to filing for bankruptcy protection, and to defense of the dischargeability litigation that was almost certain to follow. In other words, Defendant's decision to allow the default judgment to be entered against him in state court was, in part, a strategic one.

1999, after a three week trial, a jury convicted Defendant on four separate criminal counts. In particular, Defendant was found guilty of violating a federal statute dealing with solid waste disposal,[3] which provides:

**Knowing endangerment**

Any person who knowingly transports, treats, stores, disposes of, or exports any hazardous waste identified or listed under this subchapter or used oil not identified or listed as a hazardous waste under this subchapter in violation of paragraph (1), (2), (3), (4), (5), (6), or (7) of subsection (d) of this section who knows at that time that he thereby places another person in imminent danger of death or serious bodily injury, shall upon conviction, be subject to a fine of not more than $250,000 or imprisonment for not more than fifteen years, or both. A defendant that is an organization shall, upon conviction of violating this subsection, be subject to a fine of not more than $1,000,000.

42 U.S.C. § 6928(e).

At trial, the district court instructed the jury concerning the elements of this offense. It explained to the jury that in order to find Defendant guilty under this statute, the jury must unanimously agree that, among other things, "the Defendant at the time of the violation knowingly placed another person in imminent danger of death or serious bodily injury." Supp. Aff. of Roche, Ex. 1, Docket No. 11. However, the court also gave the jury the following instruction:

In determining whether the defendant knew that his conduct placed another person in imminent danger of death or serious bodily injury, you are instructed that a person's state of mind is knowing with respect to (A) his conduct, if he is aware of the nature of his conduct; (B) an existing circumstance, if he is aware or believes that the circumstance exists; or (C) a result of his conduct, if he is aware or believes that his conduct is substantially certain to cause danger of death or serious bodily injury.

. . . .

*The government does not need to show that the defendant actually intended to harm or endanger any person.*

*Id.* (emphasis added).

Defendant appealed his conviction. The Ninth Circuit Court of Appeals upheld the jury's verdict on all counts, but remanded the action to the district court to correct an error in sentencing.[4] *United States v. Elias*, 269 F.3d 1003, 1022 (9th Cir.2001), *cert. denied*, 537 U.S. 812, 123 S.Ct. 72, 154 L.Ed.2d 14 (2002). In affirming Defendant's conviction, the court rejected Defendant's challenge to the jury instruction quoted above, and found that the instruction properly restated the law. The court explained that:

The first part [of the instruction] set the bar. The jury had to find that Elias believed his conduct was "substantially certain to cause danger or death or serious bodily injury." The second part told the jury that Elias didn't have to have ordered his workers into the tank for the "design or purpose" of hurting them.

---

3. Defendant was also convicted on two other counts relating to hazardous waste disposal, but those counts dealt with his actions after Plaintiff was injured. In addition, Defendant was convicted on one count of knowingly and willfully making a false statement under 18 U.S.C. § 1001. Defendant's conviction on these charges is not implicated in this action.

4. Specifically, the court found no error in the portion of the sentence requiring Defendant to serve 204 months in prison, but concluded the trial court had improperly entered a $6.3 million restitution order against Defendant. *Elias*, 269 F.3d at 1021–22.

In other words, harming the workers did not have to have been Elias's objective in order for him to be guilty as charged.

*Id.* at 1018–19.

### 3. The bankruptcy case.

Defendant filed a Chapter 11 bankruptcy case on August 24, 2002.[5] When no confirmable plan of reorganization was proposed, on November 4, 2002, this Court granted the United States Trustee's motion and ordered that Defendant's case be converted to Chapter 7. Case No. 02–41640, Docket No. 24. At their request, both Plaintiff and the corporation that owned the tank car, which was involved in an indemnification dispute with Defendant, were granted relief from the automatic stay so that they could continue to prosecute the state court action.[6] Case No. 02–41640, Docket Nos. 37, 38.

Plaintiff commenced this adversary proceeding on February 18, 2003. Docket No. 1. His motion for summary judgment was filed on September 19, and the Court conducted a hearing concerning the motion on October 22, 2003. At the hearing, both parties appeared through counsel and made extensive arguments. The arguments were supplemented with additional briefing and affidavits after the hearing. Docket Nos. 13, 14.

After due consideration of the record, the arguments of the parties and the applicable law, the Court now disposes of the motion.

## II. The Summary Judgment Standard.

The procedural rule applicable to motions for summary judgment instructs that:

> [Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Fed.R.Civ.P. 56(c); Fed R. Bankr.P. 7056 (making Fed.R.Civ.P. 56 applicable in adversary proceedings). In the context of a motion for summary judgment, the court may not weigh the evidence or draw inferences from the record. Rather, the court should decide only whether there are any material facts in dispute, and whether the moving party is entitled to a judgment as a matter of law. *Perry v. U.S. Bank Nat'l Ass'n ND (In re Perry)*, 03.2 I.B.C.R. 128, 129 (Bankr.D.Idaho 2003) (internal citations omitted).

## III. Discussion and Analysis.

### A. The elements of a § 523(a)(6) claim.

■ Section 523 provides that "[a] discharge under section 727 [of title 11] ... does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity ...." 11

5. The Court takes judicial notice of its own files and records in Defendant's bankruptcy case, Case No. 02–41640. Fed.R.Evid. 201.

6. The state court originally entered a default judgment against Defendant on August 27, 2002, three days after Defendant filed for bankruptcy protection and the automatic stay took effect. Aff. of Roche, Ex. 27, Docket No. 9. Plaintiff thereafter requested relief from the automatic stay from this Court, Case No. 02–41640, Docket No. 9, and after that relief was granted, the state court entered a second default judgment. Aff. of Roche, Ex. 5, Docket No. 9. Defendant has not challenged the validity of the second judgment.

U.S.C. § 523(a)(6). In this Circuit, this language has been interpreted to require that the court apply a two-pronged test in determining the dischargeability of a debt. The first prong requires a creditor to prove that a debtor's conduct in causing the claimant's injuries was willful. The second prong requires a creditor to prove the debtor's conduct was malicious. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1146–47 (9th Cir.2002).

■ To satisfy the willfulness prong, the creditor must prove that the debtor deliberately or intentionally injured the creditor, and that in doing so, the debtor intended the consequences of his act, not just the act itself. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61–62, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Elaborating on the debtor's state of mind required by the statute, the Ninth Circuit has explained that a debtor must possess a subjective motive to inflict injury, or believe that injury is substantially certain to result from his conduct. *In re Su*, 290 F.3d at 1143. Thus, a creditor cannot prevail in an action brought under § 523(a)(6) unless it

is shown that the debtor had actual knowledge that harm to the creditor was substantially certain to occur from the debtor's acts. *Id.* at 1145–46. However, actual knowledge may be shown through circumstantial evidence of "what the debtor must have actually known when taking the injury-producing action . . . ." *Id.* at 1146 n. 6.

■ To satisfy the malicious prong, the creditor must prove that the debtor's conduct involved: (1) a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) is done without just cause or excuse. *Id.* at 1146–47.

## B. Issue preclusion in general.

■ Plaintiff originally argued in his brief, Docket No. 8, that both claim preclusion and issue preclusion support the entry of summary judgment in Plaintiff's favor. Then, at the hearing on the motion, Plaintiff's counsel explained that, upon further reflection, only issue preclusion was applicable in Plaintiff's case. The Court agrees.[7] As a result, only issue preclusion is examined here.

7. As Plaintiff's counsel apparently realized, case law would not support the application of claim preclusion here. Defendant's criminal conviction did not in any fashion determine whether Plaintiff's claims against Defendant are dischargeable in bankruptcy, and Plaintiff was neither a named party, nor were his interests in this case closely aligned with those of the Government, so as to support claim preclusion. *See Idaho Sporting Congress, Inc. v. Rittenhouse*, 305 F.3d 957, 964 (9th Cir.2002) (explaining claim preclusion requires: (1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties); *United States v. Schimmels (In re Schimmels)*, 127 F.3d 875, 881–82 (9th Cir.1997) (noting privity can exist when a nonparty's interests were closely aligned with a named party).

Nor would case law support the application of claim preclusion with respect to the state court judgment. In Idaho, "[u]nder principles of claim preclusion, a valid final judg-

ment rendered on the merits by a court of competent jurisdiction is an absolute bar to a subsequent action between the same parties upon the same claim." *Elliott v. Darwin Neibaur Farms*, 138 Idaho 774, 69 P.3d 1035, 1044 (2003). Bankruptcy courts are granted exclusive jurisdiction over nondischargeability claims brought under § 523(a)(6). *See* § 523(c); *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 904 (9th Cir.2001). Because of this, the state court was not a "court of competent jurisdiction" to determine the dischargeability of Plaintiff's claims. Plaintiff's tort action also fails to satisfy the "same claim" requirement. Again, the question of dischargeability fell outside the scope of the litigation in state court, so claim preclusion does not apply. *See, e.g., State v. LePage*, [138 Idaho 803,] 69 P.3d 1064, 1072 (Idaho 2003) (explaining claim preclusion would apply only to the extent a party is raising the same claim for a second time).

908

The doctrine of issue preclusion "protect[s] the finality of decisions and prevent[s] the proliferation of litigation." *Littlejohn v. United States,* 321 F.3d 915, 919 (9th Cir.2003). Simply put, issue preclusion prevents "the relitigation of issues actually adjudicated in previous litigation between the same parties." *Id.* at 923. The Supreme Court has specifically held that "[issue preclusion] principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner,* 498 U.S. 279, 284–85 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

The Court must apply federal law to determine the preclusive effect of a prior federal judgment. *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Berr v. Fed. Deposit Ins. Corp. (In re Berr),* 172 B.R. 299, 305–06 (9th Cir. BAP 1994) (applying federal issue preclusion law to a prior federal diversity judgment). However, a bankruptcy court must give a state court judgment the same preclusive effect that other courts of that state would give to the judgment. 28 U.S.C. § 1738 (mandating that state court judgments "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."); *Allen,* 449 U.S. at 96, 101 S.Ct. 411; *In re Cantrell,* 329 F.3d 1119, 1123 (9th Cir.2003); *Gayden v. Nourbakhsh (In re Nourbakhsh),* 67 F.3d 798, 800 (9th Cir.1995) (applying Florida issue preclusion law to a Florida judgment).

## C. Issue preclusion and the federal criminal conviction.

Plaintiff argues his claim against Defendant is excepted from discharge in this action under § 523(a)(6) based upon the judgment of conviction entered by the U.S. District Court in the federal criminal proceedings. Therefore, the Court must apply federal issue preclusion law to determine the preclusive effects of Defendant's conviction. For issue preclusion to apply, Plaintiff must show: (1) the issue at stake is identical to an issue raised in the prior litigation; (2) the issue was actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action. *Littlejohn,* 321 F.3d at 923.

Based on the language of the statute that Defendant was adjudged guilty of violating, the trial court's instructions to the jury, and the Ninth Circuit's definitive explanation of what the jury must have found to convict Defendant, it is clear the judgment of conviction establishes that Defendant knowingly and intentionally subjected Plaintiff to a dangerous situation that resulted in his injuries. However, the district court's judgment entered in connection with the jury's verdict does not necessarily establish that Defendant knowingly and intentionally injured Plaintiff. While the distinction is admittedly subtle, it is exceedingly important in the context of this adversary proceeding. The difference is perhaps best explained by the Ninth Circuit in *In re Su.*

In *Su,* the debtor, driving a fourteen-passenger van in rush-hour traffic in downtown San Francisco, "sped into [an] intersection against a red light, traveling 37 miles per hour in a 25 mile-per-hour zone, nearly five seconds after the light had turned red." *In re Su,* 290 F.3d at 1141. The debtor collided with one car, then ricocheted into a pedestrian, who was severely injured. *Id.* The pedestrian obtained a state court money judgment against the debtor after a jury found the debtor guilty of negligence and malice. *Id.* at 1141–42. The debtor then filed for bankruptcy and the pedestrian sought an

exception from discharge under § 523(a)(6).

The Ninth Circuit refused to conclude that the state court judgment preclusively established that the debt should be held nondischargeable. The court explained that while the debtor's decision to run the red light was, from an objective perspective, substantially certain to cause an injury, it was highly unlikely at the time of the accident that the debtor possessed a subjective belief that he would harm anyone. The court noted that if the debtor did hold such a belief, he presumably would not have entered the intersection, risking injury to himself as well as others. *Id.* at 1145–46 n. 4.

To further illustrate the importance of a debtor's subjective intent under § 523(a)(6), the court in *Su* cited *Alexander v. Donnelly (In re Donnelly)*, 6 B.R. 19, 23 (Bankr.D.Or.1980). The bankruptcy court in that case held that a reckless driver could not have intended to harm her passenger because doing so would have caused her harm as well. According to the Ninth Circuit, in the case of reckless acts such as these, while obviously involving a high degree of risk of injury to others, the debtor believes he or she can manage the risk. In other words, such acts do not, for purposes of § 523(a)(6), demonstrate a subjective intent to injure the creditor. 290 F.3d at 1145–46 n. 4. The court cites a number of cases involving automobile accidents for the proposition that even when the debtor-driver's actions are extremely reckless, absent some evidence of an intent to crash into another car, debts arising out of an accident are not excepted from discharge under § 523(a)(6).[8] *Id.* at 1146 n. 6.

Of course, the facts in the auto accident cases discussed above are somewhat different than those presented here. Defendant, in sending Plaintiff into a tank car containing poison chemicals, did not risk bodily injury to himself in the same fashion that a reckless driver is exposed to danger by speeding through a red light in rush-hour traffic. But this factual difference should not obscure the analytical approach required by *In re Su*. The Ninth Circuit decision highlights the critical difference between a debtor's intentionally risky behavior, even when that conduct may be substantially certain to cause injury to another when viewed objectively, and a debtor who harbors the subjective intent to injure another, or at least the subjective belief that injury is substantially certain. Under the policies embodied in the Bankruptcy Code as interpreted by the Supreme Court and Ninth Circuit, while it may sometimes be difficult, a creditor must show by direct or circumstantial evidence that the debtor acted with the requisite subjective intent to support a claim under § 523(a)(6).

Given this requirement, in this case the criminal judgment standing alone does not establish that Defendant acted willfully for purposes of § 523(a)(6). At most, Defendant's conviction establishes that he undertook a calculated risk in sending Plaintiff into the potentially noxious atmosphere of the tank car. Significantly, no element of the offense Defendant was convicted of committing required the jury to find that Defendant subjectively intended to harm Plaintiff. Indeed, the trial court expressly

---

**8.** Other cases also highlight how some illegal conduct may not be willful under § 523(a)(6) because of a lack of subjective intent. *See, e.g., In re Thiara*, 285 B.R. 420, 429–34 (9th Cir. BAP 2002) (discussing how not every act of conversion results in a nondischargeable debt because not every such act is committed with the necessary subjective intent to harm); *In re Jacks*, 266 B.R. 728, 741–43 (9th Cir. BAP 2001) (discussing the need to show a debtor's subjective intent to harm a creditor in addition to proof that the debtor/director used corporate funds to his personal advantage and to the detriment of creditors).

instructed the jury that it need not conclude "that the defendant actually intended to harm or endanger any person" in order to find him guilty under the statute. By convicting Defendant, all that can be assumed is that the jury found that Defendant knowingly put Plaintiff in imminent danger. In this sense, Defendant's acts resemble those of the debtor in *In re Su* where the driver obviously put pedestrians and other motorists in danger by speeding through the busy intersection, but was not shown to have subjectively intended to harm them. Consequently, Defendant's conviction falls short of establishing, for purposes of issue preclusion, that Defendant possessed the requisite subjective intent to harm Plaintiff by sending him into the tank car, or that Defendant subjectively believed that harm to Plaintiff was substantially certain to occur.

The criminal conviction also fails to establish a necessary component of the "malicious" prong of § 523(a)(6). While the conviction does demonstrate that Defendant's conduct was wrongful and that it was done without just cause or excuse, no element of the criminal offense required the jury to find that Defendant's knowing endangerment of Plaintiff would necessarily cause injury. Rather, as stated above, the conviction only established that Defendant put Plaintiff in an imminently dangerous situation, which is not the same as putting someone is a situation that will, as a matter of necessity, cause injury.

To some, it may seem peculiar that while Defendant was convicted of a federal crime and imprisoned, his conduct toward Plaintiff would not amount to a "willful and malicious" act for purposes of Plaintiff's nondischargeability action. However, any disparity in outcomes results because the two relevant statutes were designed by Congress to accomplish wholly different ends. The criminal statute is intended to impose a penalty on those who endanger others in the use of hazardous chemicals. For example, on its face, the statute appears to criminalize "knowing endangerment" even where no one was injured as a result of that endangerment. Obviously, Congress appreciated the special context and range of behaviors where the statute would apply when it crafted 42 U.S.C. § 6928(e).

Federal bankruptcy laws have been in place for centuries. Separate and apart from the considerations of Congress in enacting the relatively new laws concerning how hazardous chemicals are used, the Bankruptcy Code is interpreted in a very broad, yet distinct context. The exceptions to discharge under the Code are neither more exacting nor punitive in design and implementation than federal criminal statutes. But the Code is different and it must be interpreted and applied to reflect its specific and unique goals. Put another way, Congress intended to deny discharge of a debt arising from an extremely narrow range of conduct, that is, only where there was a willful and malicious act, performed with the subjective intent to harm another, which results in actual injury to that person. Considering these goals, the Court must conclude that Defendant's criminal conviction does not, as a matter of law, establish that Defendant was "willful and malicious" for nondischargeability purposes.

In sum, while Defendant's criminal conviction could be entitled to preclusive effect in this action, there is no indication that the district court's judgment established that Defendant acted willfully or maliciously for purposes of § 523(a)(6). Thus, Plaintiff has failed to establish, on this record, the essential elements of his claim.[9]

9. Admittedly, the record is pregnant with potential inferences relevant to ultimately deciding whether Defendant acted willfully and

## D. Issue preclusion and the state court default judgment.

 The Court applies Idaho law in determining the preclusive effect of the state court judgment. Five factors must be shown for issue preclusion to apply according to the Idaho case law: (1) the party against whom the earlier decision is asserted had a full and fair opportunity to litigate the issue decided in the earlier case; (2) the issue decided in the prior litigation was identical to the issue presented in the present action; (3) the issue sought to be precluded was actually decided in the prior litigation; (4) there was a final judgment on the merits in the prior litigation; and (5) the party against whom the issue is asserted was a party or in privity with a party to the litigation. *Rodriguez v. Dep't of Correction*, 136 Idaho 90, 29 P.3d 401, 404 (2001).

 The Court concludes without hesitation that the state court default judgment establishes factors (1), (4), and (5) in this instance. Obviously, Defendant was a party to the state action. While judgment was ultimately entered against him by the state court by default, Defendant appeared through counsel and participated extensively in the litigation up to that point.

Clearly, Defendant had a full and fair opportunity to litigate in state court. Factors (1) and (5) and therefore satisfied.

In *Rodriguez*, the Idaho Supreme Court, addressing factor (4), reiterated that for purposes of issue preclusion, a final judgment "includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." 29 P.3d at 401 (internal quotations and citations omitted); *see also Robertson Supply, Inc. v. Nicholls*, 131 Idaho 99, 952 P.2d 914, 918 (1998) (intimating that a default judgment could be used for issue preclusion purposes if the issues raised in the first action were the same as those raised in the second action); *United Servs. Auto. Ass'n v. Pair (In re Pair)*, 01.3 I.B.C.R. 99, 99 (Bankr.D.Idaho 2001) (concluding that an Idaho state court default judgment was a final judgment on the merits); *In re Coryell*, 97.1 I.B.C.R. 11, 12–13 (Bankr.D.Idaho 1997) (holding that under Idaho law a default judgment was a final judgment on the merits if the party against whom issue preclusion is asserted "participate[d] actively in the resolution of factual issues through normal adjudicative procedures.").[10] Here, Defendant has not argued that the state court default judg-

---

maliciously. But basing a decision upon such inferences would be improper in the context of a motion for summary judgment, particularly when the motion is premised on the notion that the judgments of the federal district or state court should be given preclusive effect.

10. Defendant's counsel repeatedly argues that the state trial court lacked jurisdiction to enter the default judgment because, under Idaho's Worker Compensation Law, Plaintiff's exclusive remedy was his claim before the Idaho Industrial Commission. Case law suggests otherwise. *See DeMoss v. City of Coeur D'Alene*, 118 Idaho 176, 795 P.2d 875, 878 (1990) (indicating an employee may maintain a claim against an employer for "wilful or unprovoked physical aggression" in addition

to making a claim to the Industrial Commission); *Kearney v. Denker*, 114 Idaho 755, 760 P.2d 1171, (1988) ("There is an exception from this exclusivity in any case where the injury or death is proximately caused by the willful or unprovoked physical aggression of the employer ...") (internal quotations and citations omitted). Defendant's argument may have been proper in state court, but it is inappropriate in this action. Even assuming for argument's sake Defendant's position is correct, the Idaho cases on issue preclusion, in contrast to those applying claim preclusion, do not require that a judgment, to be afforded preclusive effect, be rendered by a court of competent jurisdiction. This Court's issue preclusion inquiry is therefore limited to the factors articulated by the Idaho Supreme Court.

ment is not final. In addition, Defendant has not sought relief from the default judgment, and the record reflects that the only activity to occur after entry of the default judgment against Defendant relates to the cross-claim for indemnification asserted by the tank car's owner against Defendant. Plaintiff's Post–Hearing Mem. at 7–8, Docket No. 14. Moreover, Defendant has apparently not appealed the default judgment, and the time for doing so has long since expired. *See Rodriguez*, 29 P.3d at 405 (suggesting courts should consider whether a judgment is somehow tentative or subject to appeal when addressing issue preclusion). Thus, the default judgment represents a final judgment on the merits, and factor (4) is satisfied as well.

 ▮ Factors (2) and (3) require careful consideration. Even so, upon review of the record, the Court concludes that the default judgment actually decided the issues raised by Plaintiff's complaint in the state court action, because "[u]pon default, the allegations of the complaint are taken as true." *Olson v. Kirkham*, 111 Idaho 34, 720 P.2d 217, 220 (1986) (quoting *United Nuclear Corp. v. Gen. Atomic Co.*, 96 N.M. 155, 629 P.2d 231, 316 (1980)). In particular, as alleged in the complaint, the default judgment determined that Defendant committed an act of "wilful or unprovoked physical aggression upon [Plaintiff]" by sending him into the tank car without providing adequate safety equipment or taking appropriate safety precautions. Aff. of Roche, Ex. 6 at 3, Docket No. 9. In the deciding to enter the default judgment, by virtue of the punitive damages award, the state court must have concluded that Defendant acted with "an extremely harmful state of mind." The pivotal question therefore becomes whether the allegations of Plaintiff's state court complaint address the "willful and malicious" elements of § 523(a)(6).

 ▮ Regarding the "willful" element, the Court concludes that Plaintiff's state court complaint establishes that Defendant acted with the requisite subjective intent in sending Defendant into the toxic environment of the tank car. In addressing the meaning of the phrase "wilful or unprovoked physical aggression" in the state statute, the Idaho Supreme Court has explained:

> The word "aggression" connotes "an offensive action" such as an "overt hostile attack." *Webster's Third New International Dictionary* 41 (1969). To prove aggression there must be evidence of some offensive action or hostile attack. It is not sufficient to prove that the alleged aggressor committed negligent acts that made it substantially certain that injury would occur.

*Kearney v. Denker*, 114 Idaho 755, 760 P.2d 1171, 1173 (1988). Effectively, to recover outside the Worker's Compensation system, a claimant must prove that the employer committed an intentional act of aggression against the claimant which caused an injury. And as mentioned above, to recover an award of punitive damages, the state court must conclude that the defendant possessed an *extremely harmful state of mind* and have acted with an understanding of, or disregard for, the likely consequences of his or her acts. *Cheney*, 665 P.2d at 669.

In this case the default judgment against Defendant can be fairly read as establishing that when Defendant sent Plaintiff into the tank car, he acted with a harmful state of mind and that in doing so, Defendant either understood, or knowingly disregarded, the likely consequences of Plaintiff's entry into a confined space containing harmful chemicals, with little or no ventilation and no safety equipment. Stated differently, the state court judgment, although employing somewhat different

language, preclusively establishes that the allegations of the complaint are true, and that Defendant acted with a subjective intent to harm Plaintiff, or that he believed that harm was substantially certain to occur. Any semantic differences notwithstanding, considering the Idaho courts' interpretation of the phrase "wilful act of physical aggression," together with its rulings concerning the mental state necessary to support an award of punitive damages, the state court's default judgment conclusively establishes that Defendant, while harboring an extremely harmful state of mind, committed an act of wilful physical aggression against Plaintiff. As a result, the judgment preclusively establishes that Defendant acted "willfully" for purposes of § 523(a)(6).

With respect to whether Plaintiff's complaint alleges facts that satisfy the "malicious" element of Plaintiff's nondischargeability claim, the Court concludes that it does. Clearly, the state court judgment establishes that Defendant acted wrongfully and without just cause or excuse. Furthermore, the Idaho Supreme Court has construed Idaho Code § 72–209(3) to require an intentional act, not merely a negligent one. Therefore, the state court judgment establishes that Defendant acted intentionally as well. Finally, an act of "wilful or unprovoked physical aggression" (i.e., a battery), presumably will result in injury, although the extent of that injury may vary. Thus, the state court judgment preclusively establishes that Defendant's conduct was malicious.

### IV. Conclusion.

Both Defendant's federal criminal conviction and the state court judgment entered against Defendant could be given preclusive effect for purposes of Plaintiff's § 523(a)(6) claim. However, under federal issue preclusion law, the criminal conviction did not establish that Defendant, when he directed Plaintiff to go into the

rail car, subjectively intended to harm Plaintiff or that Defendant subjectively believed that harm to Plaintiff was substantially certain occur. Thus, the conviction does not establish that Defendant acted willfully and maliciously for purposes of the Bankruptcy Code.

By contrast, the state civil default judgment does establish, as a matter of law, that Defendant willfully and maliciously injured Plaintiff, and that Plaintiff has suffered damages on account of his injury in the amount of $23,400,000. The debt evidenced by that state court judgment is therefore excepted from discharge in bankruptcy under § 523(a)(6).

Plaintiff's motion for summary judgment will be granted by separate order.

### ORDER RE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

For the reasons set forth in the Court's Memorandum of Decision filed herein, and for other good cause, **IT IS HEREBY ORDERED THAT** Plaintiff's Motion for Summary Judgment, Docket No. 7, be and is hereby **GRANTED**. Counsel for Plaintiff shall submit an appropriate form of judgment consistent with the decision for entry by the Court.