939 P.2d 859

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Daniel W. SILVERSON, Defendant–Appellant.**

No. 22569

Court of Appeals of Idaho.

June 6, 1997.

284

Knowlton, Miles & Merica, Nez Perce County Public Defender, Lewiston, for defendant-appellant.

Alan G. Lance, Attorney General; Thomas P. Watkins, Deputy Attorney General, Boise, for plaintiff-respondent.

LANSING, Judge.

Following a jury trial, Daniel W. Silverson was found guilty of nine counts of provider fraud, I.C. § 56–227A(c). Silverson appeals from his judgment of conviction, contending that the trial court erred by admitting into evidence exhibits that were not properly authenticated under I.R.E. 901. Silverson also contends that the trial court abused its discretion in imposing a unified sentence of ten years with a four-year minimum term of incarceration. For the following reasons, we affirm.

## FACTS

The State of Idaho Department of Health and Welfare (the Department) offers a personal care provider program for elderly and disabled residents who receive Medicaid. Under this program, clients receive assistance with daily living needs such as meal preparation, house cleaning, and exercise. Silverson contracted with the Department as a personal care provider for his niece, Jennifer Jackson, and his sixty-year-old mother, Dorothy Silverson. Jennifer, who lived in Kamiah, suffered from cerebral palsy, cortical blindness, and a seizure disorder. Dorothy, who lived in Lewiston, suffered from diabetes and had undergone an amputation of her right leg and the toes on her left foot.

As part of his duties as a personal care provider, Silverson was obligated to maintain daily progress notes on forms provided by the Department. These were records of the hours he worked and the services he performed for Jennifer and Dorothy. To receive payment for the services he provided, Silverson was required to submit a "physician's invoice" indicating the amount of hours worked during a particular period. Using an electronic system, the Department reviews such invoices and issues checks for the amounts claimed.

Through witness Mond Warren, a Medicaid fraud investigator, the State introduced as trial exhibits several sets of progress notes and physician invoices allegedly prepared by Silverson. According to the State, a comparison of the progress notes and the invoices for the same periods showed that Silverson had billed the Department for more hours than he actually worked. They also showed that Silverson had submitted false claims for services he could not have performed, either because Jennifer was not at home during those times or because the notes indicated that he performed service for Jennifer in Kamiah and Dorothy in Lewiston at the same time. Defense counsel objected to the introduction of these exhibits on the basis that they were hearsay and that the documents had not been authenticated by a showing that they were, in fact, completed or signed by Silverson. The district court overruled the objections, and the jury returned a guilty verdict. On appeal, Silverson contends that the trial court erred in admitting the exhibits without proper authentication under I.R.E. 901. Silverson does not continue to advance the hearsay objection on appeal. Silverson also asserts that he received an excessive sentence.

## ANALYSIS

### A. Authentication of the Exhibits under I.R.E. 901

Idaho Rule of Evidence 901 addresses the authentication of evidence as a condition precedent to admission. It provides that the authentication requirement is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." I.R.E 901(a). Subpart (b) of the rule gives a number of examples of methods by which an exhibit may be authenticated. These examples are provided "[b]y way of illustration only, and not by way of limitation." I.R.E. 901(b).

Silverson contends that the admissibility of the progress notes and physician invoices at issue is governed by I.R.E. 901(b)(2) and (3). Under these subparts, handwriting or a signature may be authenticated by "[n]on-ex-

pert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation," I.R.E. 901(b)(2), or through "[c]omparison by the trier of fact or by expert witnesses with specimens that have been authenticated." I.R.E. 901(b)(3). Silverson is correct in asserting that the State's authentication evidence did not satisfy either of these subparts of Rule 901. Although the State presented testimony from its investigator that he recognized Silverson's signature on some of the documents, the State offered no evidence that the investigator's familiarity with Silverson's signature had been acquired for purposes other than the litigation. The State offered no expert testimony regarding the handwriting on the exhibits and did not ask that the jury be instructed to compare signatures on the documents with authenticated specimens.

However, contrary to Silverson's assumption, subparts (b)(2) and (3) of the rule do not provide the only means by which Silverson's progress notes and physician invoices could be authenticated. As noted above, the examples given in Rule 901(b) are illustrative and not exclusive. Thus, written and signed documents, like any other type of evidence, may be authenticated through any means which is "sufficient to support a finding that the matter in question is what its proponent claims." I.R.E. 901(a). This may include authentication through circumstantial evidence. We therefore must determine whether the authenticity of the documents in question was shown by methods other than those described in I.R.E. 901(b)(2) and (3).

■ The exhibits to which Silverson objected at trial can be divided into three categories. The first consists of progress notes that were discussed in an interview of Silverson by State investigator Howard Elliott. Elliott testified that during the interview Silverson admitted that he had signed these documents and that they accurately reflected the hours he had worked. These unrefuted admissions by the defendant adequately authenticated the documents as his progress notes under terms of I.R.E. 901(a).

■ The second group of exhibits at issue are progress notes that Mond Warren received in response to a letter that he sent to Silverson requesting that Silverson provide his progress notes. We conclude that these notes were sufficiently authenticated by analogy to the widely-accepted rule applicable to reply letters. Under that common law rule, a *prima facie* showing of authenticity is made by evidence that an offered letter purports to be from the addressee of a prior letter and to be in reply thereto and was received in the mail without unusual delay. Under these circumstances, it may be inferred that the reply letter is genuine and written by the purported author. *See Winel v. United States,* 365 F.2d 646 (8th Cir.1966); *Purer & Co. v. Aktiebolaget Addo,* 410 F.2d 871 (9th Cir.1969), *cert. denied,* 396 U.S. 834, 90 S.Ct. 90, 24 L.Ed.2d 84 (1969); *Conner v. Zanuzoski,* 36 Wash.2d 458, 218 P.2d 879, 883 (1950); 2 KENNETH S. BROUN ET AL., MCCORMICK ON EVIDENCE § 225 (John W. Strong, ed., 4th ed. 1992) [hereinafter MCCORMICK]; Annotation, *Proof of Authenticity of Letters Other Than by Proof of Handwriting or Typewriting,* 9 A.L.R. 984, 989–993 (1920). The evidence shows that on June 30, 1991, Mond Warren sent to Silverson by certified mail a written request for Silverson's progress notes, and that he received the notes in the mail on July 20, 1991. From this evidence it can reasonably be inferred that the delivered documents were what Warren had requested from Silverson and hence that they were what their proponent at trial claimed them to be.

■ The third set of documents to which Silverson objects are physician invoices that Silverson periodically mailed to the Department in order to receive payment for services he claimed to have provided to Jennifer and Dorothy. We conclude that these invoices were authenticated under I.R.E. 901(b)(7). That subpart provides that authentication is shown by "[e]vidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept." This rule "is based on the assumption that public officers properly perform their duties and that records kept in a public office

are ordinarily what they purport to be." Report of Idaho State Bar Evidence Committee, C 901, at 9 (Supp. 6/1/85). As explained by McCormick, *supra,* § 224 at 48, it is the official duty to receive and maintain these documents, not a duty to prepare them, which qualifies them as public records. "[W]here a public office is the depository for private papers, such as wills, conveyances, or income tax returns, the proof that such a purporting deed, bill of sale, tax return or the like has come from the proper custody is usually accepted as sufficient authentication." *Id.* Therefore, it is of no consequence that a proffered document was prepared by a private person rather than by the custodial public agency.

The physician invoices submitted by Silverson to the Department were authenticated under this rule. Warren testified that when service providers, such as Silverson, submit physician invoices to the Department, they are microfilmed and the originals are destroyed after ninety days. Warren said that he was the custodian of these microfilms and that the copies offered into evidence were reproduced from the microfilm records. Thus, Silverson was authorized, and in fact required, to file these documents, and they were from the public office where such physician invoices are kept. This evidence met the criteria of I.R.E. 901(b)(7). The authenticity of the invoices was further bolstered by evidence that the State relied upon these documents by issuing checks to Silverson for the amounts claimed and that he accepted such payments without protest. Therefore, the district court was correct in overruling Silverson's objections that the invoices were inadmissible for lack of authentication.

## B. Sentence Review

Silverson was found guilty of nine counts of provider fraud. For counts one through four, Silverson was sentenced to concurrent, unified sentences of five years, with four-year minimum terms of imprisonment. For counts five through nine, Silverson was sentenced to concurrent five-year indeterminate prison terms. The court ordered that these latter sentences would run consecutively to the sentences for counts one through four. Thus, Silverson will have to serve at least four years in prison before he will become eligible for parole. Silverson asserts that the sentences are excessive.

Our standards for appellate review of a sentence are well settled. When a sentence is within the maximum permitted for the offense, we review the sentence for an abuse of discretion. *State v. Wolfe,* 99 Idaho 382, 582 P.2d 728 (1978). The appellant bears the burden to show that the sentence is unreasonably harsh in light of the primary sentencing objective of protecting society and the related goals of deterrence, rehabilitation and retribution. *State v. Brown,* 121 Idaho 385, 825 P.2d 482 (1992); *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). In evaluating the reasonableness of a sentence, we consider the nature of the offense and the character of the offender. *See State v. Hernandez,* 121 Idaho 114, 117–18, 822 P.2d 1011, 1014–15 (Ct.App.1991); *State v. Lopez,* 106 Idaho 447, 449–51, 680 P.2d 869, 871–73 (Ct.App.1984).

The offenses for which Silverson was convicted were not violent, but they were nonetheless serious offenses which society has a pronounced interest in deterring. The Department of Health & Welfare is dependent upon the honesty of invoices and reports from providers like Silverson, not only to prevent issuance of unearned payments but also to confirm that necessary services are being received by ill or disabled clients. Silverson betrayed the trust of the State of Idaho and of members of his own family who were committed to his care, and defrauded the State out of approximately $7,000.00.

As to Silverson's character, we note that he has a lengthy criminal history, beginning when he was a juvenile. According to a presentence investigator's report, Silverson had been convicted of three prior felonies as an adult and had been imprisoned three times. Moreover, at the time of sentencing, Silverson continued to make excuses for these crimes and blamed others for his conviction.

The district court properly considered the goals of sentencing, placing emphasis on the need to deter Silverson and others from committing such crimes in the future. We find

no abuse of discretion in the sentences imposed.

The judgment of conviction and sentences are affirmed.

WALTERS, C.J., and PERRY, J., concur.