67 P.3d 29

Fred URANGA, Plaintiff–Appellant,

v.

**FEDERATED PUBLICATIONS, INC.,**
dba The Idaho Statesman,
Defendant–Respondent.

No. 27118.

Supreme Court of Idaho,
Boise, November 2002 Term.

Feb. 14, 2003.

Rehearing Denied April 15, 2003.

John L. Runft, Boise, argued for appellant.

Givens, Pursley, LLC, Boise, for respondent. Debora K. Kristensen argued.

## ON REHEARING

EISMANN, Justice.

Fred Uranga (Uranga) appeals the district court's judgment in favor of Federated Publications, Inc., d/b/a *The Idaho Statesman* (*Statesman*) dismissing, on motion for summary judgment, Uranga's claims for invasion of privacy and reckless infliction of emotional distress arising out of the publication by the *Statesman* of an article containing a photographic representation of a forty-year-old document from a court file accusing Uranga of homosexual activity. We affirm the district court's grant of summary judgment dismissing Uranga's complaint based upon the protections of the First Amendment to the Constitution of the United States.

## I. FACTS AND PROCEDURAL HISTORY

On Sunday, October 15, 1995, the *Statesman* published a front-page story entitled "The Boy Most Likely" concerning events that occurred in Boise in 1955 and 1956 surrounding an investigation that began with allegations that adult homosexual men were propositioning teenage boys at the YMCA. As the investigation grew, law enforcement officials interrogated approximately 1,500

people and arrested sixteen suspects. The events became known as the "Boys of Boise" scandal.

The *Statesman* story centered upon Frank Jones, the son of a Boise City Councilman, who had been accepted to the United States Military Academy at West Point. According to the story, six months after Frank entered West Point a man named Melvin Dir was charged with a felony for allegedly performing oral sex upon Frank two years earlier. Frank apparently admitted the sexual encounter during a taped interview at West Point, but alleged that Dir had forced him to have sex at gunpoint. Dir denied Frank's allegations regarding the use of force, and on January 7, 1956, he gave a handwritten, one-page, unsworn statement (Dir Statement) recounting his version of what occurred. In that statement, Dir wrote, "Afterwards we [Dir and Frank] talked about gay affairs that he [Frank] had had with [a classmate] and his cousin Fred Uranga." As a result of the investigation, Frank was kicked out of West Point.

In its "The Boy Most Likely" story, the *Statesman* printed a photographic representation of the Dir Statement, including the allegation regarding Uranga. In the body of the story, it summarized that portion of Dir's allegations as follows: "Afterward, they talked about sexual liaisons Frank had had with a high school classmate and with a cousin—both of whom Frank identified by name, according to Dir." The *Statesman* did not mention Uranga's name in the body of the story.

After the *Statesman* story was published, Uranga submitted a written request that it retract the sentence in the Dir Statement that implicated him in homosexual activity, claiming that the statement was libelous and invaded his privacy. The *Statesman* refused to do so, but offered to permit Uranga to submit a written response to be published in a "Speaker's Corner" feature to appear on the editorial page. If Uranga did not want to submit a written response, the *Statesman* offered to publish an explanation of its publication of the Dir Statement and to state that the *Statesman* does not have any opinion as

to the veracity of Dir's written statement and did not intend to imply that it was truthful.

On October 14, 1997, Uranga filed a complaint against the *Statesman* alleging claims for invasion of privacy and intentional and/or reckless infliction of emotional distress. The *Statesman* filed an answer and then moved for summary judgment on the grounds that it was immune from liability under the First Amendment and under the fair report privilege. After argument, the district court orally granted the motion on both grounds. On October 20, 1998, the district court entered a written order granting summary judgment and dismissing Uranga's complaint with prejudice.

Uranga timely appealed, and this case was assigned to the Court of Appeals, which upheld the district court's grant of summary judgment. Uranga then filed a petition for review, which this Court granted. After hearing oral argument, this Court issued an opinion on June 21, 2001, vacating the judgment of the district court. The *Statesman* then filed a petition for rehearing, which this Court granted.

## II. STANDARD OF REVIEW

In cases that come before this Court on a petition for review of a Court of Appeals decision, this Court gives serious consideration to the views of the Court of Appeals, but directly reviews the decision of the lower court. *Head v. State,* 137 Idaho 1, 43 P.3d 760 (2002). In an appeal from an order of summary judgment, this Court's standard of review is the same as the standard used by the trial court in ruling on a motion for summary judgment. *Infanger v. City of Salmon,* 137 Idaho 45, 44 P.3d 1100 (2002). All disputed facts are to be construed liberally in favor of the non-moving party, and all reasonable inferences that can be drawn from the record are to be drawn in favor of the non-moving party. *Id.* Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.* If the evidence reveals no disputed issues of material fact,

then only a question of law remains, over which this Court exercises free review. *Id.*

## III. ANALYSIS

■ The complaint that Uranga filed against the *Statesman* alleged three counts of invasion of privacy and one count of intentional and/or reckless infliction of emotional distress. The invasion of privacy counts were labeled "Invasion of Privacy by Intrusion," "Invasion of Privacy by Publication of Private Facts," and "Invasion of Privacy by Placing Plaintiff in False Light." [1]

■ Liability for a claim of invasion of privacy by intrusion must be based upon an intentional interference with the plaintiff's interest in solitude or seclusion, either as to his person or as to his private affairs or concerns. *Hoskins v. Howard,* 132 Idaho 311, 971 P.2d 1135 (1999); RESTATEMENT (SECOND) OF TORTS § 652B cmt. a (1976). This form of invasion of privacy does not depend upon any publicity given to the person whose interest is invaded or to his affairs. RESTATEMENT, *supra.* "To be actionable, the prying or intrusion into the plaintiff's private affairs must be of a type which is offensive to a reasonable person." *Hoskins,* 132 Idaho at 317, 971 P.2d at 1141.

■ Although Uranga labeled his first cause of action "Invasion of Privacy by Intrusion," he did not allege any intrusion into any place where he had secluded himself, or any overseeing or overhearing of his private affairs, or any other form of investigation or examination into his private concerns. In fact, he did not even allege how the *Statesman* obtained the Dir Statement. Instead, Uranga alleged:

At the time of the publication of the article, Defendant knew or should have known that Plaintiff did not wish or desire the allegations contained in the suspect statement to be exposed to the general public and that such publication would violate Plaintiff's privacy. Defendant's con-

duct in publishing the suspect statement without first taking care to redact Plaintiff's name was intentional and/or reckless, constituting an outrageous violation of Plaintiff's right to privacy.

Uranga also alleged that many of his friends, neighbors, acquaintances, business associates, and family had read the article and had seen the reference to himself. The only possible intrusion under the facts of this case was the *Statesman*'s conduct in investigating court records that are open to the public. The examination of a public court record cannot be the basis of a claim for invasion of privacy by intrusion. *Baker v. Burlington Northern, Inc.,* 99 Idaho 688, 587 P.2d 829 (1978); RESTATEMENT, *supra,* cmt. c.

■ In his complaint, Uranga also alleged a claim for false light invasion of privacy. Liability under that type of invasion of privacy requires public disclosure of some falsity or fiction concerning the plaintiff. *Hoskins v. Howard,* 132 Idaho 311, 971 P.2d 1135 (1999); RESTATEMENT, *supra,* § 652E cmt. a. In his briefs submitted in connection with his petition for review, Uranga abandoned his claim for false light invasion of privacy. His stated reason for doing so was as follows:

The appellate court's finding that a requirement that the press must independently verify all allegations found in a court record before publishing the information would impose an arduous burden on the press leading to sort of a chilling effect on press coverage and would be violative of the First Amendment, clearly precludes Uranga from proceeding under his false light privacy claim.

Thus, the only claim for invasion of privacy remaining is invasion of privacy by public disclosure of embarrassing private facts.

■ The cause of action for public disclosure of embarrassing private facts "provides for tort liability involving a judgment for damages for publicity given to true

---

1. This Court has recognized four categories of invasion of privacy: (1) Intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) Public disclosure of embarrassing private facts about the plaintiff; (3) Publicity which places the plaintiff in a false light in the public eye; and (4) Appropriation, for the defendant's advantage, of the plaintiff's name and likeness. *Hoskins v. Howard,* 132 Idaho 311, 971 P.2d 1135 (1999).

statements of fact." RESTATEMENT (SECOND) OF TORTS § 652D special note (1976). The issue before us in this case is whether, consistently with the First and Fourteenth Amendments to the Constitution of the United States, a person can have a cause of action for invasion of privacy by public disclosure of embarrassing private facts caused by the accurate publication of information in a court record open to the public.

When the *Statesman* published a photographic reproduction of the Dir Statement, the Statement was a court record. "[R]ecords of a court includes all documents, material or records in the possession of the clerk, justice, judge, magistrate or staff of the court whether or not it is filed in a case before the court." IDAHO COURT ADMIN. R. 32(b)(4) (1995). Although there is nothing before us indicating who placed the Dir Statement in the court file or why it was placed there, it is undisputed that the Dir Statement was located in a court file when the *Statesman* photographed the Statement.

Court files are open to the public for examination, inspection, and copying unless the record is exempt from disclosure by statute, case law, or court rule. IDAHO COURT ADMIN. R. 32(c)(4) (1995). Rule 32(d) specifies certain categories of files and records that are exempt from disclosure, but there is no showing that the Dir Statement would be included in any of those categories. Rule 32(f) permits a court, on a case-by-case basis, to prohibit or limit the disclosure of records that would otherwise be open to the public, but there is nothing indicating that an order was ever entered prohibiting or limiting disclosure of the Dir Statement. Likewise, Uranga has not pointed to any statute or case law that would exempt the Dir Statement from disclosure. Thus, in 1995 the Dir Statement was a court record open to the public. The *Statesman* did not obtain a copy of the Statement by using any improper means.

In *Cox Broadcasting Corporation v. Cohn*, 420 U.S. 469, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975), the United States Supreme Court addressed the issue of whether, consistently with the First and Fourteenth Amendments, a state may grant a cause of action for invasion of privacy caused by the publication of information obtained from a court record. In *Cox Broadcasting*, the information published was the name of a deceased, teen-aged rape victim. Six youths had been indicted for the murder and rape, and eight months later they appeared in court where five of them pled guilty to rape or attempted rape, the murder charge having been dropped. The trial of the sixth youth was set for a later date. During the course of the court proceedings that day, a reporter employed by Cox Broadcasting Corporation approached the clerk of the court during a recess and asked to see a copy of the indictments. The clerk handed the reporter the indictments, from which he learned the name of the victim. Later that day, Cox Broadcasting broadcast the victim's name during its television coverage of the court proceedings. A state statute made it a misdemeanor to publish or broadcast the name of a rape victim. The victim's father then filed an action for damages against Cox Broadcasting, based upon the misdemeanor statute and common law invasion of privacy. The trial court granted summary judgment to the plaintiff on the issue of liability, and on appeal the state supreme court held that the plaintiff might have a common law claim for invasion of privacy based upon the publication of his daughter's name. On rehearing, the state supreme court held that the statute making it a crime to publish the name of a rape victim was constitutional as a legitimate limitation on the right of freedom of expression and that the statute declared the state policy that the victim's name was not a matter of public interest. On appeal, the United States Supreme Court held that the protection of freedom of the press provided by the First and Fourteenth Amendments barred the state from making the defendant's broadcast of the rape victim's name a basis for civil liability.

The Supreme Court began its analysis by recognizing that the issue was the conflict between the right of privacy, enjoyed by all individuals, and the constitutional freedoms of speech and press. "Because the gravamen of the claimed injury is the publication of information, whether true or not, the dissemination of which is embarrassing or otherwise

painful of an individual, it is here that claims of privacy most directly confront the constitutional freedoms of speech and press." *Cox Broadcasting* at 489, 95 S.Ct. 1029. The Court recognized that these are both significant concerns for society. "In this sphere of collision between claims of privacy and those of the free press, the interests on both sides are plainly rooted in the traditional and significant concerns of our society." *Id.* at 491, 95 S.Ct. 1029. To resolve this conflict, the Supreme Court focused upon the strengths of the competing interests.

With respect to the interest in the right of privacy, the Court noted that such interest diminishes when the invasion of that right is based upon the publication of information contained in a record that is open to the public. Quoting from the Tentative Draft of the Second Restatement of Torts, the Court stated as follows:

> Tentative Draft No. 13 of the Second Restatement of Torts, §§ 652A–652E, divides the privacy tort into four branches; and with respect to the wrong of giving unwanted publicity about private life, the commentary to § 652D states: "There is no liability when the defendant merely gives further publicity to information about the plaintiff which is already public. Thus there is no liability for giving publicity to facts about the plaintiff's life which are matters of public record....." [2]

*Cox Broadcasting* at 494, 95 S.Ct. 1029. Based upon the lack of liability for invasion of privacy when the invasion is based upon the publication of information in records open to the public, the Court concluded that in such circumstance there was little interest in protecting the right of privacy. The Court concluded, "Thus even the prevailing law of invasion of privacy generally recognizes that the interests in privacy fade when the information involved already appears on the public record." *Id.* at 494–95, 95 S.Ct. 1029.

With respect to the freedoms of speech and the press, the Court noted that there is a significant public interest in reporting the commission of crime, resulting prosecutions, and judicial proceedings arising from those prosecutions. The Court emphasized, "The special protected nature of accurate reports of judicial proceedings has repeatedly been recognized." *Id.* at 492, 95 S.Ct. 1029. The Supreme Court was also concerned about the chilling effect upon the freedoms of speech and press if liability for invasion of privacy could be based upon the reporting of information contained in records open to the public.

We are reluctant to embark on a course that would make public records generally available to the media but forbid their publication if offensive to the sensibilities of the supposed reasonable man. Such a rule would make it very difficult for the media to inform citizens about the public business and yet stay within the law. The rule would invite timidity and self-censorship and very likely lead to the suppression of many items that would otherwise be published and that should be made available to the public.

*Id.* at 496, 95 S.Ct. 1029. The Court then stated, "At the very least, the First and Fourteenth Amendments will not allow exposing the press to liability for truthfully publishing information released to the public in official court records." *Id.*

Finally, the Court noted that the States could protect the privacy interests of individuals by limiting the information placed in court records. "If there are privacy interests to be protected in judicial proceedings, the States must respond by means which avoid public documentation or other exposure of private information." *Id.* The Supreme Court stressed this latter factor again in *The Florida Star v. B.J.F.*, 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989), in which the Court held that a weekly newspaper could not be held civilly liable for publishing the name of a rape victim. The Court stated, "Where information is entrusted to the government, a less drastic means than punishing truthful publication almost always exists for guarding against the dissemination of private facts." *Id.* at 534, 109 S.Ct. 2603.

**2.** The wording quoted by the Supreme Court from the Tentative Draft of the Restatement remained in the final draft. RESTATEMENT (SECOND) OF TORTS § 652D cmt. b (1976).

In *Baker v. Burlington Northern, Inc.*, 99 Idaho 688, 587 P.2d 829 (1978), this Court quoted from *Cox Broadcasting* in upholding the granting of a motion for summary judgment dismissing a claim for invasion of privacy by public disclosure of embarrassing private facts. The facts disclosed in *Burlington Northern* concerned the plaintiff's criminal record and were obtained from a check of public records. After quoting from *Cox Broadcasting*, this Court stated, "Thus, assuming that there was a public disclosure by Burlington Northern, the disclosure was of public, not private facts, and therefore such disclosure was not actionable under the second category of invasion of privacy." *Burlington Northern*, 99 Idaho at 692, 587 P.2d at 833.

The factors upon which the Supreme Court based its decision in *Cox Broadcasting* also weigh in favor of upholding the granting of summary judgment in this case. Uranga argues, however, that there are factual differences between this case and *Cox Broadcasting* that support the imposition of liability in his case.

█ Uranga argues that the information published in *Cox Broadcasting* concerned a current criminal prosecution, while the Dir Statement was connected with a criminal prosecution that had occurred almost forty years earlier. There is no indication that the First Amendment provides less protection to historians than to those reporting current events. "No suggestion can be found in the Constitution that the freedom there guaranteed for speech and the press bears an inverse ratio to the timeliness and importance of the ideas seeking expression." *Bridges v. California*, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941).

Uranga also contends that even if the story published by the *Statesman* concerned a matter of public significance, his name was not newsworthy. Therefore, the *Statesman* should have redacted his name before publishing a copy of the Dir Statement. In *The Florida Star v. B.J.F.*, 491 U.S. 524, 109 S.Ct. 2603, 105 L.Ed.2d 443 (1989), the Supreme Court addressed the issue of the pub-

lic significance of publishing the name of the rape victim. The Court stated:

> It is, clear, furthermore, that the news article concerned 'a matter of public significance,' in the sense in which the *Daily Mail*[3] synthesis of prior cases used that term. That is, the article generally, as opposed to the specific identity contained within it, involved a matter of paramount public import: the commission, and investigation, of a violent crime which had been reported to authorities.

*Id.* at 536–37, 109 S.Ct. 2603 (citation omitted). The Supreme Court indicated that whether or not the article is a matter of public concern is based upon the article generally. Each fact included within the article need not be a matter of public significance.

Therefore, although the circumstances surrounding the publication in question certainly evoke sympathy for Uranga, this case cannot be distinguished from *Cox Publishing* based upon the age of the court record and the lack of significance in having Uranga's name appear in the story. Furthermore, Uranga has not offered any standard by which to determine when a court record is too old or a particular fact in such record too insignificant for its publication to merit First Amendment protection. Absent such a standard, there would be no way to judge in advance whether or not a publication would enjoy First Amendment protection. The "timidity and self-censorship" which may result from the lack of such a standard is precisely what the Supreme Court sought to prevent in *Cox Publishing* and *The Florida Star*.

█ The instant case is not sufficiently distinguishable from *Cox Broadcasting*. The First and Fourteenth Amendments do not permit the *Statesman* to be held liable in damages for accurately publishing a document contained in a court record open to the public. Changing the cause of action from invasion of privacy to infliction of emotional distress does not circumvent the constitutional protection of the publication. *See Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1193 n. 2 (9th Cir.1989).

---

**3.** *Smith v. Daily Mail Publ'g Co.* 443 U.S. 97, 99 S.Ct. 2667, 61 L.Ed.2d 399 (1979).

In *Cox Broadcasting,* the Supreme Court stated, "In this instance as in others reliance must rest upon the judgment of those who decide what to publish or broadcast." 420 U.S. at 496, 95 S.Ct. 1029. As James Madison said, "Some degree of abuse is inseparable from the proper use of every thing; and in no instance is this more true than in that of the press." 4 Elliot's Debates on the Federal Constitution 571 (1876 ed.).

### IV. CONCLUSION

The judgment of the district court is affirmed. Costs on appeal are awarded to the respondent.

Justice WALTERS and Justices Pro Tem WESTON, J., SMITH, J., and BURDICK, J., CONCUR.