132 P.3d 1261

Katie ALDERSON, individually, and
Kelli Alderson, individually,
Plaintiffs–Respondents,

v.

Gary Lynn BONNER, Defendant–
Appellant.

No. 31122.

Court of Appeals of Idaho.

April 5, 2006.

Gary Lynn Bonner, Nampa, pro se appellant.

Brassey, Wetherell, Crawford & McCurdy, Boise, for respondent.

LANSING, Judge.

Appellant Gary Lynn Bonner appeals following a judgment in which damages were awarded against him in favor of respondents Katie and Kelli Alderson on their claims for invasion of privacy and intentional infliction of emotional distress. Bonner asserts error in the trial proceedings and in the trial court's denial of his post-trial motions for judgment notwithstanding the verdict and for a new trial. We affirm in part and reverse in part.

## I.

### BACKGROUND

In June 2000, Nampa police arrested Gary Lynn Bonner for prowling outside the residence of Kelli Alderson, age twenty-one. At the time, Bonner was carrying a video camera. A tape found inside the camera contained video images of Kelli's sixteen-year-old sister, Katie Alderson, and their mother, JoDee Alderson, in various states of undress, engaging in everyday activities such as getting dressed, exercising and using the bathroom. These video segments were recorded at JoDee and Katie's residence in Nampa, where they had lived before moving to Missouri in May 2000. The video appeared to have been recorded by Bonner over a span of several months in 1999 and 2000, at night, through gaps in the blinds covering the windows of the Alderson home. Kelli also lived with JoDee and Katie at this residence until the end of 1999, but then moved to the house where Bonner was later apprehended. None

of the video was recorded at Kelli's June 2000 residence.

Bonner was acquainted with the Alderson family because he had been JoDee's supervisor at Union Pacific Railroad until 2000. At some point in the late 1990s, apparently, at least in Bonner's view, a fledgling romantic relationship arose between Bonner and JoDee. Any actual relationship that in fact existed, however, eventually fell into disrepair. Bonner testified during trial that a telephone call from JoDee on the morning he was apprehended outside Kelli's home made him extremely distraught, triggered an obsessive compulsive reaction, and caused him to go to Kelli's house. Bonner's defense theory was that he never intended to videotape either Katie or Kelli, and that all of his actions in 1999 and 2000 were directed toward JoDee and were caused by the anxiety-inducing on-again, off-again relationship.

Several pieces of litigation arose from this incident. The State filed misdemeanor and felony charges against Bonner, and Bonner was subsequently convicted on both counts, but the felony conviction was reversed on this Court's determination that the statute under which he was charged was unconstitutional. See State v. Bonner, 138 Idaho 254, 61 P.3d 611 (Ct.App.2002). Another subsequent criminal charge was later dismissed by the district court. Additionally, after Bonner was fired from his job at Union Pacific, he filed civil suits against Union Pacific and a Union Pacific employee who reported Bonner's conduct to the company. Finally, JoDee brought a civil action against Bonner and Union Pacific Railroad.

The present case involves Kelli's and Katie's various tort claims. A jury returned verdicts in favor of Kelli and Katie on their claims of trespass to land, intentional infliction of emotional distress, and invasion of privacy. Bonner thereupon filed a motion for judgment notwithstanding the verdict (jnov) under Idaho Rule of Civil Procedure 50(b), a motion for a new trial under I.R.C.P. 59(a), and a motion for relief from judgment under I.R.C.P. 60(b). The district court granted the jnov motion with respect to the trespass claims and reduced the damage awards accordingly, but otherwise denied Bonner's post-trial motions. The remaining awards totaled $140,000 for Katie ($100,000 for intentional infliction of emotional distress and $40,000 for invasion of privacy), and $55,000 for Kelli ($40,000 for intentional infliction of emotional distress and $15,000 for invasion of privacy).

Bonner now appeals, alleging trial errors and errors in the denial of his post-trial motions.

## II.

## ANALYSIS

### A. The Videotape Evidence

At trial, the original videotape was not available because it had been destroyed at the behest of the prosecutor after the conclusion of criminal proceedings against Bonner. Before the original was destroyed, however, a copy was made, and the copy was offered into evidence at the trial in the present case. Bonner objected that the copy did not meet the standards for admission of a duplicate, that the plaintiffs failed to lay proper foundation showing the copy's authenticity, and that the plaintiffs had not shown a sound chain of custody. The trial court overruled Bonner's objection and admitted the copy of the videotape into evidence. Bonner contends that this ruling was error.

■ By longstanding rule, a trial court has "broad discretion in the admission of evidence at trial and its decision to admit such evidence will be reversed only when there has been a clear abuse of that discretion." Empire Lumber Co. v. Thermal–Dynamic Towers, Inc., 132 Idaho 295, 304, 971 P.2d 1119, 1128 (1998). Generally, the original of a recording must be introduced in order to prove the content of the recording. Idaho Rule of Evidence 1002. There are exceptions to this rule, however, including an exception where the original has been destroyed. I.R.E. 1004. To be admissible as a duplicate, an exhibit must be "a counterpart produced by . . . mechanical or electronic re-recording . . . which accurately reproduces the original." I.R.E. 1001(4). A duplicate is not admissible if "(1) a genuine question is raised as to the authenticity or continuing

effectiveness of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." I.R.E. 1003.

Physical items, such as the videotape at issue here, must be authenticated before they may be admitted into evidence. I.R.E. 901. *See also State v. Silverson*, 130 Idaho 283, 285, 939 P.2d 859, 861 (Ct.App.1997). Rule 901 provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Authentication may be presented, for example, through the "[t]estimony of a witness with knowledge that a matter is what it is claimed to be." I.R.E. 901.

■ During trial, Officer Skoglund, who had viewed the original videotape from Bonner's camera, testified that he had viewed the videotape that was being offered as evidence and that it was an accurate copy of the original. Thus, Officer Skoglund had knowledge that the videotape being offered was what the plaintiffs claimed it to be. This was sufficient to satisfy the Rule 901 authentication requirements and to lay the foundation required by I.R.E. 1001(4) for use of an accurate duplicate when the original has been destroyed.

Bonner asserts that the videotape admitted into evidence was not an accurate copy because of alleged inconsistencies between it and information noted in police reports and testimony. For example, Bonner points out that Officer Skoglund's police report described the videotape as forty-five minutes in length, while the copy is only thirty-five minutes long. Officer Skoglund explained, however, that in his report he made only an estimate of the videotape's length. The alleged inconsistencies identified by Bonner do not so refute Officer Skogland's testimony as to make the foundation inadequate.

■ Bonner also argues that the videotape copy was inadmissible because the plaintiffs did not show where the copy "came from" and did not prove a complete chain of custody. While that may be true, it does not render the evidence inadmissible, for proof of a chain of custody is not a separate requirement for admissibility. *State v. Fee*, 124 Idaho 170, 175,.857 P.2d 649, 654 (Ct.App. 1993). Here, although plaintiffs did not present evidence to show the origin of the copy, Officer Skoglund's testimony demonstrates that there was no break in the chain of custody up to the moment he first viewed the *original* tape, and he testified that there was no material difference between the two tapes. Thus, the plaintiffs adequately demonstrated that the copy of the videotape was in substantially the same condition as the videotape that was seized from Bonner at the time of his arrest. The copy was properly admitted.

## B. Motion for Judgment Notwithstanding the Verdict

Bonner contends that the district court erred in denying his motion for jnov on Kelli's invasion of privacy claim as well as on both plaintiffs' claims of intentional infliction of emotional distress. Bonner argues that there was insufficient evidence for a jury to find that Kelli Alderson was actually videotaped and therefore, as a matter of law, he could not be liable to her for either invasion of privacy or intentional infliction of emotional distress. He also contends that neither plaintiff suffered the severe emotional distress required to warrant recovery for the latter tort.

■ In determining whether a motion for jnov should have been granted, an appellate court applies the same standard as the trial court that originally heard the motion. *Quick v. Crane*, 111 Idaho 759, 764, 727 P.2d 1187, 1192 (1986). The issue to be resolved is whether substantial evidence supports the jury's verdict. *Lanham v. Idaho Power Co.*, 130 Idaho 486, 495, 943 P.2d 912, 921 (1997). Upon a motion for jnov, the moving party admits the truth of all adverse evidence, and all inferences that can legitimately be drawn therefrom must be viewed in the light most favorable to the non-movant. *Highland Enterprises, Inc. v. Barker*, 133 Idaho 330, 337, 986 P.2d 996, 1003 (1999); *Quick*, 111 Idaho at 763, 727 P.2d at 1191. The motion should be granted only where there can be but one conclusion as to the verdict that reasonable minds could have reached and that conclu-

sion does not conform to the jury verdict. *Highland Enterprises, Inc.,* 133 Idaho at 337, 986 P.2d at 1003.

### 1. Kelli's claim for invasion of privacy

The tort of invasion of privacy encompasses several categories. *See Jensen v. State,* 139 Idaho 57, 62, 72 P.3d 897, 902 (2003). In this case, Kelli sued under a theory that Bonner intruded upon her seclusion or solitude or into her private affairs. The interest protected by this tort theory is "primarily a mental one." *Peterson v. Idaho First Nat'l Bank,* 83 Idaho 578, 583, 367 P.2d 284, 287 (1961). Under this theory, Kelli was required to show: (1) an intentional intrusion by Bonner, (2) into a matter which Kelli had a right to keep private, (3) by the use of a method which is objectionable to a reasonable person. *Id.; Uranga v. Federated Publications, Inc.,* 138 Idaho 550, 553, 67 P.3d 29, 32 (2003); *Hoskins v. Howard,* 132 Idaho 311, 317, 971 P.2d 1135, 1141 (1998).

█ We conclude that the trial evidence on Kelli's claim was sufficient to satisfy these elements. There is no dispute that Bonner was intentionally present at Kelli's house on the night of his arrest. Kelli testified that she was alerted to Bonner's presence because she saw the shadow of a figure outside her front door as she was about to go to bed. When police arrived, Bonner was still present, standing in the driveway area, holding a video camera. As a consequence of the police investigation that followed, Kelli learned that while she had been living at her mother's residence, Bonner had been peering into windows and secretly videotaping Kelli's mother and sister. Bonner apparently did not film Kelli on the night of his arrest, and she was not the subject of his videotapes made at the residence of Kelli's mother, but the tort of invasion of privacy does not require the specific act of videotaping. From all of the evidence, a reasonable jury could conclude that just prior to his arrest Bonner had been peering into Kelli's residence watching her activities that she had a right to keep private, and that Bonner's secret surveillance of Kelli was offensive or objectionable to a reasonable person.

Of course, standing on another's front porch and looking through a window in the door is not normally offensive. People expect that others may uninvitedly come to their front doorstep, even at night. But it is expected that such visitors are there to make contact with the occupants and that they will alert the occupants of the residence by knocking or ringing a doorbell. When an uninvited man lurks at the front door at night, peering in the window at a young female, with video camera in hand and without announcing his presence, such conduct is objectionable. It is "of such a nature as a reasonable person can see might and probably would cause mental distress and injury to anyone possessed of ordinary feelings and intelligence, situated in like circumstances as the plaintiff." *Jensen,* 139 Idaho at 62, 72 P.3d at 902. Based upon this evidence, it was reasonable for the jury to find that Bonner committed the tort of invasion of privacy by intruding upon Kelli's seclusion or solitude or into her private affairs. Therefore, the trial court did not err in denying Bonner's motion for jnov on Kelli's invasion of privacy claim.

### 2. Intentional infliction of emotional distress claims

█ In Idaho, "an action for intentional infliction of emotional distress will lie only where there is extreme and outrageous conduct coupled with severe emotional distress." *Walston v. Monumental Life Ins. Co.,* 129 Idaho 211, 219, 923 P.2d 456, 464 (1996) (quoting *Davis v. Gage,* 106 Idaho 735, 741, 682 P.2d 1282, 1288 (Ct.App.1984)). To prevail on this cause of action a plaintiff must show: (1) that the defendant acted intentionally or recklessly; (2) that the defendant's conduct was extreme and outrageous; (3) that there was a causal connection between the defendant's conduct and the plaintiff's emotional distress; and (4) that the plaintiff's emotional distress was severe. *Spence v. Howell,* 126 Idaho 763, 774, 890 P.2d 714, 725 (1995); *Payne v. Wallace,* 136 Idaho 303, 306, 32 P.3d 695, 698 (Ct.App.2001); *Davis,* 106 Idaho at 741, 682 P.2d at 1288.

### a. Outrageousness of Bonner's conduct

To qualify as "extreme and outrageous," the defendant's conduct must be more than merely objectionable or unreasonable. "Even if a defendant's conduct is unjustifiable, it does not necessarily rise to the level of 'atrocious' and 'beyond all possible bounds of decency' that would cause an average member of the community to believe it was 'outrageous.'" *Edmondson v. Shearer Lumber Prod.*, 139 Idaho 172, 180, 75 P.3d 733, 741 (2003). One of the first Idaho cases to discuss this tort discussed the requisite level of misconduct this way:

> However one defines what persons can expect from society it is plain that courts have required very extreme conduct before awarding damages for the intentional infliction of emotional distress. *See, e.g., Blakeley v. Shortal's Estate*, 236 Iowa 787, 20 N.W.2d 28 (1945) (defendant's decedent committed suicide in plaintiff's kitchen); *Hill v. Traveler's Ins. Co.*, 154 Tenn. 295, 294 S.W. 1097 (1927) (mutilation of dead body); *Boyle v. Chandler*, 138 A. 273 (Del. Sup.1927) (removal of body from casket); *Price v. Yellow Pine Paper Mill* Co., 240 S.W. 588 (Tex.Civ.App.1922) (plaintiff's husband brought home in severely injured condition without warning); *Great A. & P. Tea Co. v. Roch*, 160 Md. 189, 153 A. 22 (1931) (wrapping up a dead rat in place of a loaf of bread for a sensitive customer); *Bielitski v. Obadiak*, 61 Dom. L. Rep. 494 (1921) (spreading false rumor that plaintiff's son had hanged himself).

*Hatfield v. Max Rouse & Sons Northwest*, 100 Idaho 840, 850, 606 P.2d 944, 954 (1980).

The outrageousness that will justify liability under this tort is illustrated in a number of Idaho cases, including *Walston*, 129 Idaho 211, 923 P.2d 456 (insurance company's unfair dealings with a grieving widower); *Curtis v. Firth*, 123 Idaho 598, 850 P.2d 749 (1993) (prolonged physical, mental, and sexual abuse); *Gill v. Brown*, 107 Idaho 1137, 695 P.2d 1276 (Ct.App.1985) (recklessly shooting and killing a donkey that was both a pet and a pack animal); *Spence*, 126 Idaho 763, 890 P.2d 714 (real estate developers swindling a family out of their "life long dream"). By contrast, in some cases where conduct was arguably unjustifiable, it was nevertheless held not to be sufficiently outrageous or extreme for liability, *e.g., Brown v. Matthews Mortuary, Inc.*, 118 Idaho 830, 801 P.2d 37 (1990) (loss of corpse was not extreme or outrageous); *Hatfield*, 100 Idaho at 850–51, 606 P.2d at 954–55 (auctioneer's sale of equipment at "ruinous" price below minimum set by seller, and issuance of multi-payee settlement check that caused intra-family conflict); *Payne*, 136 Idaho 303, 32 P.3d 695 (belligerent yelling of profanities in presence of a child after an automobile accident). No reported Idaho decision has previously addressed a situation analogous to this case, but courts of at least two other jurisdictions have held that similar conduct supported a claim for intentional infliction of emotional distress. *See Miller v. Brooks*, 123 N.C.App. 20, 472 S.E.2d 350, 354 (1996) (breaking into another person's house and installing a video camera was extreme and outrageous conduct); *Dana v. Oak Park Marina, Inc.*, 230 A.D.2d 204, 660 N.Y.S.2d 906, 910 (N.Y.App. Div.1997) ("surreptitiously videotap[ing] plaintiff without her consent, view[ing] videotapes of plaintiff and others in various stages of undress for personal and unjustifiable purposes and display[ing] those tapes to others for purposes of trade" was extreme and outrageous).

Bonner wisely concedes that his surreptitious videotaping of sixteen-year-old Katie in a state of undress through her bedroom window was sufficiently egregious to satisfy the element of this tort requiring extreme and outrageous conduct. He argues, however, that his behavior toward Kelli, although unjustifiable, was not atrocious and beyond all possible bounds of decency, and therefore the district court should have granted his motion for jnov on Kelli's claim.

The evidence to support Kelli's cause of action differs substantially from that underlying Katie's claim. Although Kelli was living in JoDee Alderson's residence during part of the period when Bonner was videotaping there, she was not a target or focus of his spying. Kelli was not videotaped by Bonner and, so far as revealed by the evidence, he never watched Kelli in her bedroom or

bathroom or in a state of undress. And his act of standing on her front porch looking through an uncovered window in the front door at night is not so extreme or outrageous as to support a cause of action for intentional infliction of emotional distress. Accordingly, we hold that Kelli did not meet her burden to prove that Bonner's conduct *toward her* rose to the level of outrageousness or atrociousness that is necessary to support a cause of action for intentional infliction of emotional distress. Further, even if the outrageous conduct element is satisfied, as explained in the next section of this opinion we conclude that Kelli did not prove consequent severe emotional distress that is necessary to support an award for this tort.

#### b. Severity of emotional distress

 Bonner argues that neither Kelli nor Katie presented evidence of emotional suffering of sufficient gravity to satisfy this element of a cause of action for intentional infliction of emotional distress. He correctly points out that liability for this tort arises only when the emotional distress has been severe. *Davis*, 106 Idaho at 741, 682 P.2d at 1288.

 Unlike the tort of *negligent* infliction of emotional distress, intentional infliction of emotional distress does not require injury or a physical manifestation resulting from the emotional turmoil. *Curtis*, 123 Idaho at 601, 850 P.2d at 752. Consequently, courts have expressed concern that allowing recovery of damages for emotional distress in the absence of any physical injury may lead to fraudulent claims. *Hatfield*, 100 Idaho at 849, 606 P.2d at 953. By requiring both conduct that is "outrageous" and emotional distress that is "severe," courts have sought to limit fictitious claims. *Id.*

 As a guideline on the requisite severity of emotional injury, Idaho courts have repeatedly referred to this commentary from the RESTATEMENT (SECOND) OF TORTS § 46 cmt. j (1965):

Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea. It is only where it is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity.

*See Payne*, 136 Idaho at 306–07, 32 P.3d at 698–99; *Bethel v. Van Stone*, 120 Idaho 522, 528–29, 817 P.2d 188, 194–95 (Ct.App.1991); *Evans v. Twin Falls County*, 118 Idaho 210, 220, 796 P.2d 87, 97 (1990); *Herrera v. Conner*, 111 Idaho 1012, 1023, 729 P.2d 1075, 1086 (Ct.App.1986); *Davis*, 106 Idaho at 741, 682 P.2d at 1288. In evaluating whether distress is sufficiently severe, we consider, among other factors, whether the plaintiffs "incurred any physical damage or were hampered in the performance of their daily functions ... [or] suffered a severely disabling emotional response." *Davis*, 106 Idaho at 741, 682 P.2d at 1288.

 Whether a plaintiff has suffered the requisite severe distress is ordinarily a question for the jury, but Idaho appellate courts have not hesitated to hold the evidence insufficient as a matter of law when it clearly did not describe mental turmoil of sufficient gravity. For example, we held that the emotional distress element had not been established where a young child reacted with screams, fear, and crying when another motorist yelled insults at the child's mother after an auto accident and the child experienced sleep disturbance the night after the accident. *Payne*, 136 Idaho at 307, 32 P.3d at 699. The Idaho Supreme Court held the requisite severity lacking where a licensed counselor testified that the plaintiff was "seriously frustrated" from enduring a hostile and abusive workplace. *Jeremiah v. Yanke Machine Shop, Inc.*, 131 Idaho 242, 249, 953 P.2d 992, 999 (1998). And in *Davis*, we held that the plaintiffs' testimony that they were

upset, embarrassed, angered, bothered and depressed was not enough. *Davis,* 106 Idaho at 741, 682 P.2d at 1288.

These cases stand in contrast to those where Idaho courts have found emotional distress of the requisite severity. In *Curtis,* severe emotional distress was found where the victim of domestic abuse, who was later diagnosed as suffering from post traumatic stress disorder, resorted to drugs in order to cope with forced sexual activities that she found repugnant. *Id.* at 606, 850 P.2d at 757. In *Spence,* testimony by the plaintiffs, their children, and their neighbors and friends was sufficient to raise a jury issue as to whether "the shock of losing 550 acres of land upon which a family based a life's plan" qualified as severe emotional distress. *Id.* at 774, 890 P.2d at 725.

▮ In this case, the evidence does not show that Kelli's reaction to Bonner's acts reached a level of severe emotional distress. Kelli testified that as a result of Bonner's acts, she started living with her father. Precisely when this occurred and how long this residential arrangement continued are not disclosed. When asked what other ways Bonner's conduct affected her she testified, "I don't want to get dressed in my own house. Fear for myself, not only that there's somebody outside, but that they could enter. Fear for my children, just general people that you trust. The list goes on and on." She also testified that she has problems sleeping, has nightmares occasionally, and does not fully trust people. When JoDee Alderson was asked what effects on Kelli she had observed, JoDee stated, "I think it's a lot of trust issue [sic] with Kelli," and "I think with friends, she's much more quieter, more reserved. I don't know if that's because of that, but more withdrawn."

This testimony does not describe the type of severe or disabling emotional reaction that is essential to a claim for intentional infliction of emotional distress. It is more akin to the evidence in *Davis* that the plaintiffs were "upset, embarrassed, angered, bothered and

depressed," which we deemed insufficient. *Davis,* 106 Idaho at 741, 682 P.2d at 1288.

▮ Although Katie's evidence presents a closer question, we conclude that it, likewise, does not demonstrate a degree of mental suffering meeting the standard for a cause of action for intentional infliction of emotional distress. Katie testified that when she first viewed the tape she was embarrassed, ashamed and angry and felt physically ill. Katie also testified that when moving into dormitories and apartments she has taken steps to live above the ground floor, and she will change clothes only in a windowless room, away from windows, or in the dark. She reported that she has experienced difficulty trusting males and is fearful walking alone at night. There was testimony that Katie suffered nightmares and night terrors, but there was also testimony that these began before Bonner's activities.

We conclude that this evidence of Katie's reactions does not demonstrate the sort of emotional turmoil from which liability can arise for intentional infliction of emotional distress. It describes emotional discomfort that is compensable on Katie's claim for invasion of privacy,[1] but it does not describe distress "so severe that no reasonable [person] could be expected to endure it," *Evans,* 118 Idaho at 220, 796 P.2d at 97, or "a severely disabling emotional response." *Davis,* 106 Idaho at 741, 682 P.2d at 1288.

It appears that the attorney representing Kelli and Katie recognized that this element was weak in their case, for in his opening statement he appeared to be preparing the jurors for the absence of evidence of severe emotional difficulties for the sisters. He stated:

> The evidence will show also that Kelli and Katie have dealt very well with this event. Kelli is married. She's pregnant, in fact .... and Katie is in college, playing college athletics, doing well. So the evidence will not be that they have become com-

---

1. It has been said that the tort of invasion of privacy for intrusion into the plaintiff's seclusion or private affairs is used "chiefly to fill the gaps" left by other torts, including the intentional in-

fliction of emotional distress, trespass and nuisance, *Jensen,* 139 Idaho at 62, 72 P.3d at 902; *Peterson,* 83 Idaho at 583, 367 P.2d at 287. It fulfills that function in the present case.

pletely debilitated by learning about what I've described to you.

Although we are not of the view that a plaintiff must have become "completely debilitated" in order to sustain an action for intentional infliction of emotional distress, we do conclude that evidence of more severe emotional response is required than was presented here.

In sum, we hold that the district court correctly denied Bonner's motion for jnov on both Kelli's and Katie's claims for invasion of privacy, but the motion should have been granted with respect to their claims for intentional infliction of emotional distress.

## C. Motion for a New Trial and Motion for Relief from Judgment

Bonner next contends that the district court erred in denying his motion for a new trial and his I.R.C.P. 60(b) motion for relief from judgment. Bonner contends that misconduct by the plaintiffs' attorney and errors of the court deprived him of a fair trial and that the damages awarded by the jury were excessive and based on passion and prejudice.

### 1. Attorney misconduct and trial court errors

Bonner argues a new trial should be granted pursuant to I.R.C.P. 59(a)(1) or 60(b)(3) because misconduct of plaintiffs' counsel and erroneous jury instructions by the trial court resulted in an unfair trial. A new trial may be granted for, among other reasons, irregularity in the proceedings or an abuse of discretion by which a party was prevented from having a fair trial, accident or surprise that ordinary prudence could not have guarded against, excessive damages or inadequate damages appearing to have been given under the influence of passion or prejudice, or errors of law occurring at the trial. I.R.C.P. 59(a)(1), (3), (5), (7). Relief from a judgment may be granted under Rule 60(b)(3) for "fraud ... or other misconduct of an adverse party." A trial court's disposition of a Rule 59(a) motion for a new trial or a Rule 60(b) motion will be upheld unless the court has manifestly abused the wide discretion vested in it. *Myers v. Workmen's Auto*

*Ins. Co.,* 140 Idaho 495, 506, 95 P.3d 977, 988 (2004); *Win of Michigan, Inc. v. Yreka United, Inc.,* 137 Idaho 747, 753, 53 P.3d 330, 336 (2002); *Miller v. Haller,* 129 Idaho 345, 349, 924 P.2d 607, 611 (1996).

We first consider Bonner's claim that the plaintiffs' attorney engaged in misconduct by not producing the videotape copy during discovery, giving Bonner a right to relief from the judgment pursuant to I.R.C.P. 60(b)(3). A Rule 60(b) motion may be granted "only upon a showing of unique and compelling circumstances." *Miller,* 129 Idaho at 349, 924 P.2d at 611. The trial court rejected Bonner's contention that plaintiffs' counsel had wrongfully failed to disclose the videotape in discovery. The district court explained that the videotape that was admitted into evidence had not been in the plaintiffs' possession but in the court files from another of the lawsuits in which Bonner had been engaged. The court pointed out that Bonner had access to the videotape during that case and others and could not legitimately claim surprise as to the existence or content of the videotape. The court's comments are supported by the record. There is no abuse of discretion in this ruling as Bonner did not demonstrate discovery misconduct by the plaintiffs.

Bonner also claims entitlement to a new trial based upon statements made by plaintiffs' counsel during closing argument. First, plaintiffs' counsel said in argument that Bonner had told the jury in Bonner's opening statement that he had spent tens of thousands of dollars in attorney fees prior to trial. This statement was untrue. In fact, Bonner had been prevented from mentioning those fees by a pretrial order that was granted on the plaintiffs' motion in limine. Nevertheless, the district court overruled Bonner's objection to counsel's statement during closing argument. The objection should have been sustained because the argument was inaccurate and therefore improper. Nevertheless, the trial court's refusal to grant a new trial on the basis of this small error was not an abuse of discretion. The jury was properly instructed not to consider any of counsel's arguments that were not supported

**744**

by evidence. A trial error or defect is not a ground for granting a new trial if it does not affect substantial rights of the parties. I.R.C.P. 61; *Lambert v. Hasson,* 121 Idaho 133, 137, 823 P.2d 167, 171 (Ct.App.1991). In light of the jury instruction, and considering the context of the entire trial, this error in the closing argument was not so prejudicial as to have affected Bonner's substantial rights or deprived him of a fair trial.

■ Bonner also argues he should have been granted a new trial because in closing argument plaintiffs' counsel referred to Bonner's use of a stepladder and, according to Bonner, there was no evidence at trial regarding a stepladder. In denying Bonner's motion, the district court found that a stepladder was visible on the videotape and that use of the stepladder was also apparent from the fact that the video camera was pointed downward, from points above the top of window coverings. Bonner now argues that the stepladder was only visible on the videotape when JoDee was being filmed and, therefore, was not relevant as to the claims of Kelli and Katie. This argument lacks merit; Bonner's use of a stepladder to surreptitiously look through windows at a residence where Kelli and Katie resided was relevant to their claims for invasion of privacy and emotional distress.

■ Bonner next contends that an error in the jury instructions necessitates a new trial. He challenges instruction no. 15, which stated that the jury could draw negative inferences if, in response to a question, a witness invoked the Fifth Amendment right against self-incrimination. Bonner argues that this instruction was erroneous and contradicted instruction no. 2, which said that questions asked by the attorneys were not to be considered as evidence. According to Bonner, instruction no. 15 turns a question into evidence if the question is answered by invoking the Fifth Amendment.

■ Whether the jury was properly instructed is a question of law over which this Court exercises free review. *State v. Bush,* 131 Idaho 22, 32, 951 P.2d 1249, 1259 (1997); *State v. Cherry,* 139 Idaho 579, 585, 83 P.3d 123, 129 (Ct.App.2003). On appeal,

jury instructions are viewed as a whole, not individually, to determine whether the jury was properly and adequately instructed on the applicable law. *State v. Rozajewski,* 130 Idaho 644, 646, 945 P.2d 1390, 1392 (Ct.App. 1997).

Instruction no. 15 was neither an incorrect statement of the law nor contradictory to instruction no. 2. The United States Supreme Court has approved a jury's use of adverse inferences from a witness's invocation of the Fifth Amendment in a civil trial. *Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810, 821 (1976). Instruction no. 15 does not direct the jury to consider questions asked by the attorneys as evidence, but rather allows the jury to infer an adverse *answer* to the question due to the witness's refusal to answer and invocation of the Fifth Amendment. Accordingly, there was no instructional error that would call for a new trial.

## 2. Excessive damages

■ Lastly, Bonner sought a new trial on damages under I.R.C.P. 59(a)(5). As a general rule, it is a jury function to set the damage award based on its sense of fairness and justice. *Quick,* 111 Idaho at 769, 727 P.2d at 1197. In ruling upon a motion for a new trial under I.R.C.P. 59(a)(5), premised upon inadequate or excessive damages, the trial court weighs the evidence and then compares the jury's award to what the court would have given had there been no jury. *Myers,* 140 Idaho at 506, 95 P.3d at 988; *Dinneen v. Finch,* 100 Idaho 620, 625–26, 603 P.2d 575, 580–81 (1979). The trial court must defer to the jury unless it is apparent to the court "that there is a great disparity between the two damage awards and that the disparity cannot be explained away as simply the product of two separate entities valuing the proof of the plaintiff's injuries in two equally fair ways." *Quick,* 111 Idaho at 769, 727 P.2d at 1197. Put another way, the verdict should not stand if the disparity is so great that it appears to the trial court that the award was given under the influence of passion or prejudice. *Quick,* 111 Idaho at 768, 727 P.2d at 1196; *Dinneen,* 100 Idaho at 625, 603 P.2d at 580. On appeal, this Court

will not reverse a trial court's order granting or denying a motion for new trial "unless the court has *manifestly* abused the wide discretion vested in it." *Myers,* 140 Idaho at 506, 95 P.3d at 988 (emphasis in original). Although we must review the evidence, we are not in a position to "weigh" it as the trial court may. *Id.*

Because we have reversed the judgments against Bonner on the claims for intentional infliction of emotional distress, the only damages remaining for our review are the awards to Katie of $40,000 and to Kelli of $15,000 for invasion of privacy. We conclude that these awards are not so excessive or evidently the product of passion or prejudice that the trial court can be said to have abused its discretion in denying Bonner's motion for a new trial on these damages.

### D. Attorney Fees on Appeal

 Katie and Kelli have requested an award of attorney fees under Idaho Code § 12–121. Attorney fees are awardable to a prevailing party under this section only when the court is left with the abiding belief that the appeal was brought, pursued, or defended frivolously, unreasonably, or without foundation. *Gallagher v. State,* 141 Idaho 665, 669, 115 P.3d 756, 760 (2005); *Nepanuseno v. Hansen,* 140 Idaho 942, 947, 104 P.3d 984, 989 (Ct.App.2004). Because Bonner has prevailed on some issues, the plaintiffs are not the prevailing party, and the appeal was not frivolous. We therefore will not award attorney fees to the plaintiffs.

### III.

### CONCLUSION

The district court's order denying Bonner's motion for judgment notwithstanding the verdict on the plaintiffs' claims for intentional infliction of emotional distress is reversed. The judgment of the trial court and its orders on Bonner's post-trial motions are in all other respects affirmed. Because there is no overall prevailing party, no costs are awarded on appeal.

Chief Judge PERRY and Judge GUTIERREZ concur.